Elba **ESTRADA ADORNO, and Juan Villegas Gonzalez**

v.

**Jose R. GONZALEZ, individually and as President of the Government Development Bank of Puerto Rico, and Gustavo Doble, individually and as advisor for the Government Development Bank of Puerto Rico; Government Development Bank.**

**Civ. No. 86–1234 (JP).**

United States District Court, D. Puerto Rico.

Dec. 31, 1987.

Rafael Rivera–Rosa, Río Piedras, P.R., for plaintiffs.

Manuel Alvarado, Saldaña, Rey, Morán & Alvarado, Santurce, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action for back pay, damages, declaratory relief and injunctive relief brought pursuant to 42 U.S.C. § 1983. Plaintiff alleges a cause of action arising under the first and fourteenth amendments of the U.S. Constitution for her dismissal from her position as Personnel Director of the Government Development Bank of Puerto Rico (GDB). She claims that her dismissal resulted from her opposition to considering political affiliation as a job requirement for positions in the GDB.

The matter is before the Court on defendants' Motion for Summary Judgment and opposition thereto. In support of their motion, defendants argue that plaintiff held a trust position and has no right to due process. Defendants also contend that plaintiff has no standing to sue for the constitutional violations of third parties, and therefore, has no cause of action under the first amendment. Defendants claim that they need not reinstate plaintiff pursuant to 3 L.P.R.A. § 1358 because this Court is barred from ordering such remedy under *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed. 2d 67 (1984), and alternatively that 3 L.P.R. A. § 1338 exempts them from the requirements of § 1358. Finally, defendants claim entitlement to qualified immunity.

The Court held a Pretrial Conference on June 17, 1987, which counsel attended. The Court later continued sine die the trial set for June 29, 1987.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the Court must view the record and draw inferences in the light most favorable to the opposing party. *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 815 (1st Cir.1987).

The parties have stipulated to the following facts:

Plaintiff was employed in the Department of Housing as Executive Officer III, in the Personnel Division, a career position, from March 3, 1980, to February 16, 1985, earning $755.00 a month. José Ramón Oyola, appointed by Governor Rafael Hernández Colón as the President of the GDB and a Popular Democratic Party (PDP) member, appointed plaintiff to the position of Administrative Aide to the President on February 10, 1985, a trust position with a starting salary of $2,689.17. About two weeks later, she was placed in the position

of Personnel Director, a trust position with no increase in salary. The plaintiff was appointed Vice–President, retaining duties as Personnel Director, on April 1, 1985.

By letter signed by the new President José Ramón González, dated March 27, 1986, plaintiff was dismissed from her position as Personnel Director, effective April 1, 1986. Plaintiff is a member of the PDP, and during the 1984 electoral campaign she was a fund raiser for that party. Defendant José Ramón González was appointed as President of the GDB on March 15, 1986. The decision to separate plaintiff as Personnel Director was made by Mr. González as President of the GDB. During his tenure as Executive Vice–President of the GDB and after being named President, Mr. González perceived the office of Chief of the Personnel Division as involving sensitive, confidential, and important functions.

I. Personnel Director

A. *Fourteenth Amendment*

■ The due process clause of the fourteenth amendment guarantees the right to an informal hearing prior to discharge to public employees with a property interest in continued employment. *Brock v. Roadway Express,* — U.S. —, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). A property interest is created by "existing rules or understandings that stem from an independent source such as state law." *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491. The defendant argues that plaintiff did not hold a property interest in continued employment.

The local law governing the issue of the property right is the Puerto Rico Public Personnel Law, ("Act") 3 L.P.R.A. § 1301, *et seq.* The Act divides government employees into two categories, career employees and trust or confidential employees. 3 L.P.R.A. § 1349. Confidential employees are "those who intervene or collaborate substantially in the formulation of public policy, who advise directly or render direct services to the head of the agency ..." 3 L.P.R.A. § 1350. Confidential employees

are "of free selection and removal." 3 L.P.R.A. § 1336(4) (Supp.1985). In contrast, career employees may only be dismissed for "good cause, after preferment of charges in writing." *Id.*

Under the GDB's Personnel Regulations, the Personnel Director of the GDB is a trust or confidential position. The job description of the Personnel Director reads that she is responsible for the supervision of the GDB's personnel and for the formulation and development of the labor policy of the GDB. Additionally, she advises the President of the GDB on the formulation and implementation of personnel policy within the GDB. Furthermore, the Personnel Director actively participates in the negotiation of collective bargaining agreements and meets with union leaders to discuss union personnel.

Under the Personnel Act, a trust employee does not possess a property interest to continued public employment and therefore is not entitled to due-process protection prior to discharge. *Laureano–Agosto v. Garcia Caraballo,* 731 F.2d 101, 103 (1st Cir.1984). Accordingly, defendant's Motion for Summary Judgment on the due process claim is GRANTED, and the Court DISMISSES this claim.

B. *First Amendment*

■ This complaint presents a unique situation in that the plaintiff is not a member of the rivaling New Progressive Party (NPP), but is a member of the PDP. She complains that as Personnel Director she was forced by her supervisor to accept and hire political appointees to positions within the GDB, in violation of the merit principle. Her cause of action for political discharge is not based on her political affiliation, but on her refusal to put politics above the law.

■ The defendant argues that plaintiff has not alleged a violation of her own constitutional rights, but the constitutional rights of third parties, or employment candidates, and thus has no standing to sue. We do not see it this way. The plaintiff has established that she suffered an economic injury in fact, that she was dis-

charged for political reasons, and thus she does have a direct stake in the outcome of the litigation. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Olitsky v. O'Malley*, 597 F.2d 295 (1st Cir. 1979).

The plaintiff argues that she was fired because she did not toe the party line. She refused to continue to hire unqualified PDP applicants over qualified NPP applicants and, in doing so, she followed the merit principle. The defendant does not claim that political affiliation was necessary for the Personnel Director's position. Rather, defendant claims that first-amendment jurisprudence offers no protection to a Personnel Director who has the same political affiliation as the defendant, who alleges no intraparty disputes, who made no public statements, and who merely disagreed with the permissible filling of vacant positions on a patronage basis. The protection of the first amendment cannot be so constricted.

The personnel department of a public-service agency is the central workshop of employment policy and practice. When the department conducts its business honestly and within the norms and regulations established by law, it produces an efficient workforce comprising employees of merit. The community, which is composed essentially of the citizens who pay taxes and deserve service of excellence, consequently receives the benefits of better public service. But the personnel department can also be the nerve center of a political patronage system. In a burlesque parody of the ideal system that is envisioned by lawmakers, the marionette at the head of a patronage department disregards all rules and regulations in employing the political hacks of the party in power. The result is not only a mockery of orderly government, but the oppressive imposition of a political machinery upon the constitutionally protected rights of citizens.

The government is not the property of the party in power. It belongs to the people and it is organized to do the people's bidding. In celebrating the Bicentennial of the United States Constitution, our eyes were repeatedly turned to an inspiring theme: "We the people". Our living constitution demands that patronage practices, which degrade our system of government, cease forthwith. The people of Puerto Rico are entitled to have the person in charge of employment conduct her practices in accordance with the rules and regulations established for the benefit of all. The people should be protected from the consequences of political personnel decisions that serve the selfish benefit of a few politicians who seek to elevate themselves in the eyes of the populace by dispensing favors and privileges. The people have a right to a government of laws and not of persons who may, at a particular time, sit in positions of power.

The plaintiff claims that the government deprived her of her job solely because she chose to remain politically impartial when exercising the prerogatives of her office in hiring public employees. If she shows this claim to be true, she will have shown that the government has violated the right to free speech and assembly granted her by the first amendment. In other words, we hold that the first amendment rights of a government employee are violated when the employee has an obligation to discharge her duties without consideration of political affiliation and yet she is discharged because she failed to base her work decisions on political affiliation.

We thus conclude that the plaintiff has adequately stated a cause of action for violation of civil rights, cognizable under section 1983. Accordingly, the defendant's motion for summary judgment is DENIED.

## II. Executive Officer III

Before her appointment to the trust positions in the GDB, plaintiff held a career position in the Department of Housing: Executive Officer III. The Personnel Act provides job security for career employees who assume trust positions by creating an entitlement to reinstatement in an equal or equivalent career position. Section 1350 states that "[e]very regular employee in a career position who is appointed to a confidential position shall be entitled to be rein-

stated in a position equal or similar to the last one he held in the career service." 3 L.P.R.A. § 1350 (as amended July 17, 1979). Section 1358 establishes procedures for attaining one's rights under § 1350. The plaintiff claims that the defendants' failure to reinstate her to a position equivalent to Executive Officer III denied her first- and fourteenth-amendment rights.

### A. The Pennhurst Defense

■ Defendants argue that they were not obligated to reinstate plaintiff because § 1338 exempts the GDB from the strictures of the Personnel Act, and in any event, that *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), prohibits this Court from using local law as a means to a remedy. In *Pennhurst*, the Court considered a challenge to the conditions of care at a Pennsylvania institution for care of the mentally retarded. The plaintiff alleged violation of the Pennsylvania Mental Health and Mental Retardation Act, and the defendant argued that the eleventh amendment barred federal courts from entertaining a suit brought by a citizen of his own state. The Court agreed, concluding that the general eleventh-amendment rule should apply: "a claim that state officials violated state law in carrying out their official responsibility is a claim against the state that is protected by the Eleventh Amendment." *Pennhurst* at 121, 104 S.Ct. at 919. The Court also noted an exception to this rule: "a suit challenging the constitutionality of a state official's action is not one against the state." *Pennhurst* at 102, 104 S.Ct. at 909, *citing Ex–Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In this case, plaintiff claims that the denial of reinstatement was for political reasons and was accomplished without due process. She is challenging the constitutionality of defendants' actions, and if she prevails she will receive remedies under the first and fourteenth amendments, not under § 1350. *Pennhurst* therefore has no effect on her claims.

### B. GDB's Exemption From the Personnel Act

■ Defendants also argue that §§ 1358 and 1350 do not obligate them to reinstate plaintiff because 3 L.P.R.A. § 1338 exempts GDB from the Personnel Act. Section 1338(3) dictates that Chapter 51, Public Service Personnel, of Title 3 does not apply to "[e]mployees of government agencies or instrumentalities operating as private enterprises or businesses." We need not untangle the various statutory provisions and agency regulations, nor determine the nature and extent of defendant's obligations thereunder, because the case is now before us on defendants' motion for summary judgment. Regardless of the proper interpretation of the Personnel Act, a genuine issue of material fact exists with respect to first-amendment protection and the failure to reinstate the plaintiff; that is, the trier of fact must determine whether defendants would have denied reinstatement even in the absence of political consideration. *Mt. Healthy City School District Bd. of Ed. v. Doyle*, 429 U.S. 274, 97. S.Ct. 568, 50 L.Ed. 2d 471 (1976). The existence of an obligation under the Personnel Act might be a component of the relevant inquiry, but it does not constitute the entire question. Even if the defendants had no statutory obligation to reinstate the plaintiff, the jury must determine whether the failure to reinstate was for that reason or for impermissible political reasons.

■ Defendants fail to show that they are entitled to judgment on plaintiff's fourteenth-amendment reinstatement claim, as well. Defendants apparently reason that under their interpretation of the Personnel Act the plaintiff has no property interest created by "existing rules or understandings that stem from independent sources such as state law." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). This assumes, however, that §§ 1350 and 1358 are the only source of plaintiff's property interest. In fact, § 1338 requires exempt organizations under § 1338(3) to propound personnel regulations embodying the merit principles.

Plaintiff has unfortunately neglected to introduce GDB personnel regulations into the record, while defendants have failed to offer any evidence that GDB regulations do not provide a property interest pursuant to § 1338. The Court thus finds itself with an inadequate record upon which it could base entry of summary judgment. The burden is on the defendants to show that there is no issue of material fact, and we find that defendants have failed to carry that burden. Accordingly, the defendant's motion for summary judgment as to plaintiff's reinstatement claim is DENIED.

III. Qualified Immunity

■ In actions brought under 42 U.S.C. § 1983, a defense of qualified immunity from liability for damages is available to state executive officers performing discretionary functions, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). At this point in the litigation, it is appropriate for a trial court to determine whether the law was clearly established at the time of the conduct at issue. *De Abadia v. Izquierdo Mora,* 792 F.2d 1187 (1st Cir. 1986). The law was clearly established in 1986 that public employees are protected by the first amendment guarantees of freedom of speech and association from being discharged solely because of political affiliation, unless political affiliation is an appropriate requirement for the effective performance of the office. *Mendez Palou v. Rohena Betancourt,* 813 F.2d 1255, 1259 (1st Cir.1987). *See Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 367–68, 96 S.Ct. 2673, 2686–87, 49 L.Ed.2d 547 (1976).

This "appropriateness test" is most appropriately applied only to a small category of first-amendment cases: those concerning patent patronage dismissals of a public employee who finds herself without the proper party affiliation or sponsorship. *See Jones v. Dodson,* 727 F.2d 1329, 1334, 1334 n. 6 (4th Cir.1984). For reasons that follow, we find it inadvisable to adopt the appropriateness test in cases such as this one. Instead, we conduct a more open-ended first-amendment analysis. Our inquiry into defendant's qualified immunity focuses on three questions: whether the plaintiff was entitled to first amendment protection, whether the state has an interest that overrides that protection, and whether the plaintiff's protection was clearly established at the time of her discharge.

In arguing the qualified immunity issue, defendant chose merely to incorporate the defenses it argued in support of summary judgment.[1] In her reply, the plaintiff failed to address any of these arguments directly but preferred instead to recite a list of material facts in dispute. Neither party directly addressed the substantive issues relevant to qualified immunity.[2] Because we find that no governmental interest outweighs Estrada's right to freedom of speech and association, we conclude that her discharge was unconstitutionally accomplished. Moreover, because the action was clearly unconstitutional at the time of the firing, we conclude that the defendants are not entitled to qualified immunity.

The Supreme Court held in 1958 that the first amendment's guarantee of freedom of association prohibited the conditioning of

1. Defendants' arguments regarding standing and other predicates to a first-amendment claim are without merit, see above, and defendant fails to offer argument or evidence that Estrada was removed for reasons other than her loyalty to the PDP.

2. Political discrimination cases typically proceed as follows: the plaintiff claims a first-amendment motive for her dismissal (which is usually conceded by the defendant); then the defense rests on a public-interest justification for the discharge (for political speech cases, the justification is usually that the employer's interest in efficiency outweighs the employee's interest in making a statement of public interest; for patronage cases, the justification is typically that political affiliation is an appropriate requirement for the job). *Jones v. Dodson,* 727 F.2d at 1336. In this case we consider plaintiff's allegation of first amendment motive as true, not because defendant concedes the point, but because he offers no evidence at this stage to rebut the claim.

public employment on political loyalty, unless the state has an overriding reason for such a condition. *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). State interests that override an employee's first amendment rights are relatively few and narrowly drawn—"[t]he interest advanced must be paramount, one of vital importance, and the burden is on the government to show the existence of such an interest." *Elrod* at 362, 96 S.Ct. at 2684. For example, a state may deny employment to an active or knowing member of an organization properly designated as subversive. *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), but may condition employment on loyalty oaths only in restricted circumstances. *See e.g., Connell v. Higginbotham,* 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971).

In *Elrod,* the court considered the patronage dismissals of several clerical-level employees in a sheriff's department. The plurality opinion found that patronage practices violate the first amendment because they coerce an employee to compromise her true beliefs and they condition the receipt of public benefit on holding specified beliefs. The state of Illinois claimed significant state interests in political patronage, including the preservation of the two-party system and promotion of interest in lower-echelon elections; but the court found such interests unpersuasive when balanced against the freedoms of belief and association, at least for non-policy making, non-confidential employees. *Elrod* at 372, 96 S.Ct. at 2689. *See* Nowak, Rotunda & Young, *Constitutional Law,* 964 (2d Ed. 1983).

In *Branti,* the Court affirmed *Elrod's* first amendment protection and extended it to the position of assistant public defender. The court agreed that the first amendment protects plaintiffs who "prove that they were discharged 'solely for the reason that they were not affiliated with or sponsored by'" a political party. *Branti* at 517, 100 S.Ct. at 1294 (quoting *Elrod* at 350, 96 S.Ct. at 2678). And when the state claims a vital interest in government efficiency and effectiveness, it must meet the appro-

priateness standard: the state has a vital interest when it can show that political affiliation is appropriate for the job. *Branti* at 517, 100 S.Ct. at 1294. In the *Branti* plaintiff's case, the court found that political affiliation undermined, rather than promoted, performance of the assistant public defender's office, *Branti* at 519, 100 S.Ct. at 1295; so the state had insufficient interest in overriding the plaintiff's interests, and the plaintiff was thus protected by the first amendment.

*Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986), stands as the First Circuit's definitive refinement of the *Branti* analysis. In conducting its appropriateness inquiry with regard to the position of the Regional Director of the Puerto Rico Urban Development and Housing Corporation (CRUV), the court articulated a two-part test: whether the position relates to partisan political interests or concerns, and whether the position is a policymaking one. This test derives from the appropriateness standard of *Branti,* and it recognizes the state's interest in gaining a representative government that works. *Jiménez Fuentes* at 241.

The present case departs from the norm in that Estrada's political affiliation was the same as the defendant's. The issue here is not simply the party affiliation of the plaintiff, but the degree of her loyalty to that affiliation. This difference alone would not convince us that the *Jiménez Fuentes* test should not apply. A test for appropriateness of political loyalty should not be any different from a test for appropriateness of political affiliation. If the government can insist on party affiliation, it certainly can insist on loyalty. As this case demonstrates, a disloyal PDP member is no more effective in bringing about PDP goals than would be an NPP member. For most positions in which affiliation is appropriate, an employee's disloyalty would be highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of his office. *Cf. Ness v. Marshall,* 660 F.2d 517 (3d Cir.1981).

There are, however, additional distinctions between the typical interparty patron-

age dismissal and this intraparty loyalty dismissal. The degree of loyalty demanded —i.e., to violate merit principle and to advance illegal patronage practices—is a significant difference. A governmental interest in efficiency might weigh heavier than an employee's constitutional freedoms, but a governmental interest in violating the constitution does not.

Another difference with the *Elrod–Branti–Jiménez Fuentes* situation is the nature of Estrada's duties, which comprised a mixture of political and nonpolitical, policymaking and ministerial.[3] The predominant function of the personnel office must necessarily be nonpolitical—Estrada was required to conduct her business in strict accordance with the merit principle and with the United States Constitution. *See* above at 951. Most of her functions were not in the realm of independent policy making; rather, she was constrained by the policies and supervision of her superiors. *Cf. Román Meléndez v. Inclan,* 826 F.2d 130, 134 (1st Cir.1987) ("a regional director's 'responsibility includes the supervision, coordination and evaluation of all the work done in the office, applying *with broad independence* the public policy of the agency in the development of the work program.'" (emphasis by the Court of Appeals). There is no indication that Estrada was dismissed for disagreeing with her supervisors over her political duties, such as labor negotiations. This is not surprising; Estrada was an active PDP member and presumedly shared PDP convictions on most issues.

We note further that application of the *Branti–Jiménez Fuentes* inquiry to cases such as this could lead to entrenchment of patronage systems and inadequate protection of the rights of civic-minded employees. Applying the "appropriateness of affiliation" test to Estrada's position might well lead to the conclusion that the head of a personnel office has no first-amendment protection due to the political nature of

labor negotiations. But we do not think that the first amendment requirement of an overriding governmental interest of vital importance, *Branti* at 515, 516, 100 S.Ct. at 1293, 1293–94, can be thus adulterated. The government cannot evade the *Branti–Elrod* condemnation of patronage systems by installing purely political personnel directors and then ensuring their blind loyalty by placing policy-making tasks in their job descriptions. Even when political affiliation is appropriate for some aspects of a job, the government cannot coerce the incumbent to violate her beliefs and thereby force partisan political concerns into areas where they are not otherwise tolerable. And when an employee resists the unlawful imposition of politics in nonpolitical areas, the government cannot be allowed to retaliate by discharging the employee.

In consideration of these important factual distinctions and policy concerns, we conclude that we are required to conduct a more open-ended first-amendment analysis, rather than the "essentially rigid *Branti* inquiry." *Jones v. Dodson,* 727 F.2d 1329, 1355 n. 6 (4th Cir.1984).

It is apparent that the rationale of *Elrod, Branti* and *Jiménez Fuentes* should lead us to protect plaintiff Estrada's position. Estrada has a first-amendment interest that we must jealously protect, *i.e.,* to affiliate with the PDP with the loyalty she deems appropriate, free of the government's coercion toward placing PDP loyalty above her obligations to uphold the personnel laws of Puerto Rico and the Constitution of the United States. The government has an interest in efficiency, effectiveness, and responsiveness to the electorate. But these interests cannot justify disregard of the merit principle nor flaunting of the Supreme Court's decisions that patronage policies are unconstitutional. Indeed, the GDB will be more efficient, effective, and responsive if the repressive and

---

**3.** See Appendix for the job description submitted with the defendant's Motion for Summary Judgment. Plaintiff claims that this job description was never given to her. We make no determination at this time whether the defend-

ants have shown that the inherent duties of the position make it appropriate for political affiliation. *Cf. Romero Feliciano v. Torres Gaztambide,* 824 F.2d 135, 138 (1st Cir.1987).

stagnating practices of patronage are eliminated. As Personnel Director, Estrada is responsible for eliminating patronage; and we must take this responsibility into account when we determine whether her interest are subservient to those of the government.

We thus find that the government's interest in effectiveness, *Ness v. Marshall*, 660 F.2d at 521–523, efficiency, and responsiveness, *Jiménez Fuentes*, 807 F.2d at 241, do not outweigh the personnel director's interest in maintaining a lawful level of political loyalty. Moreover, it is evident that, at the time of Estrada's discharge, the law was clearly established that no public employee could be removed for political reasons apart from an overriding governmental interest, *see NAACP v. Alabama ex rel. Patterson*, 357 U.S. at 463, 78 S.Ct. at 1172; *Elrod* 427 U.S. at 357, 96 S.Ct. at 2681–82; and that maintenance of a patronage system was not a proper interest. *Elrod* at 357, 96 S.Ct. at 2681–82; *Branti* at 515–516, 100 S.Ct. at 1293–94. We find that the defendants could not have, in good faith, believed that they were permitted by law to discharge (and fail to reinstate) an employee who had some policy-making responsibilities, combined with significant obligation towards the merit system and the United States Constitution, for the reason that she refused to place loyalty to the party above loyalty to the laws and policies she was obligated to preserve. We thus hold that, as a matter of law and based on the evidence before us, a reasonable man in the positions of the defendants would not have believed that his conduct was warranted. *See De Abadia v. Izquierdo Mora*, 792 F.2d at 1191. There is therefore no qualified immunity for the defendants.

IV. Summary

The defendants' motion for summary judgment is DENIED as to the following claims: 1) the first-amendment claim for discharge as Personnel Director; 2) the first-amendment claim for failure to reinstate as Executive Officer III; and 3) the fourteenth-amendment claim for failure to reinstate as Executive Officer III. The motion is GRANTED as to the fourteenth-amendment claim for discharge as Personnel Director. In addition, the defendants' motion for qualified immunity is DENIED.

The Clerk shall enter partial judgment accordingly.

This case will be reset for Trial and settlement conference.

IT IS SO ORDERED.

APPENDIX

The Position Description submitted by the defendant summarizes the personnel director's duties as follows:

The Head of the Personnel Division is responsible for the planning, coordination and direction of recruitment, training, classification and compensation activities, personnel transactions, personnel relations and evaluations, and participates in the formulation and development of the labor policy of the Development Bank.

The incumbent of this position formulates, recommends, interprets and implements the Personnel Administration policy of the Development Bank and advises the President and other officials regarding the same.

Directs and supervises professional and administrative personnel assigned to technical and clerical tasks related to the functions of the Personnel Division.

The Official acts within the Bank's policy and objectives for personnel administration. The work is reviewed through the evaluation of results obtained.

The duties of the personnel director are enumerated as follows:

1. Formulates, recommends, interprets and, once approved, implements the personnel administration policy of the Development Bank.

2. Plans, coordinates, directs and supervises the daily and long-term administration activities conducted in the Development Bank.

3. Administers the Collective Bargaining Agreement currently in force, insuring its correct application in all administrative procedures and pro-

cesses of the Personnel Division; consults with the Legal Counsel in those cases or situations where there arise or may arise conflicts of interpretation of the clauses of the Collective Bargaining Agreement.

4. Participates in the negotiation of the Collective Bargaining Agreement and provides pertinent information to support the Bank's points of view in the collective bargaining.

5. Advises executives and managerial personnel regarding the interpretation of personnel administration rules and regulations.

6. Formulates and implements the necessary administrative procedures for the most efficient operation of the Personnel Division.

7. Directs and supervises the professional, clerical and secretarial personnel assigned to the Personnel Division.

8. Establishes rules and procedures for compliance with the Collective Bargaining Agreement.

9. Advises and trains managerial personnel on the terms and provisions of the Collective Bargaining Agreement, labor regulations and laws.

10. Speaks with Union representatives about the scope and nature of the clauses of the Collective Bargaining Agreement, the different problems and conflicting situations that arise from the administration of the Collective Bargaining Agreement and other administrative rules and provisions, and reaches pertinent agreements in that regard.

11. Analyzes reports and recommendations from supervisors about problems, grievances, controversies and complaints of unionized employees and resolves cases submitted to him.

12. Directs administrative hearings and meetings on cases or complaints related to unionized personnel.

13. Studies the Union's positions, resolves the same and/or consults with Legal Counsel on those interpretation cases he deems pertinent because a legal problem or issue is involved in the matter.

14. Represents the Development Bank in negotiations with the Union in situations of varying types which require a bilateral arrangement for their solution and drafts the stipulations once final agreement has been reached.

15. Represents the Development Bank before the Labor Relations Board, the Department of Labor and the Minimum Wage Board.

16. Studies courts' and arbitrators' decisions and new labor-management legislation in order to determine their applicability to the Development Bank's conditions.

17. Performs related work as required.