**Elba ESTRADA–ADORNO,**
**Plaintiff, Appellee,**

v.

**Jose R. GONZALEZ, etc., et al.,**
**Defendants, Appellants.**

No. 88–1282.

United States Court of Appeals,
First Circuit.

Heard Sept. 15, 1988.
Decided Nov. 10, 1988.

Manuel Alvarado with whom Elba Rosa Rodriguez, Saldana, Rey, Moran & Alvarado, Santurce, P.R., Hon. Hector Rivera–Cruz, Secretary of Justice, and Rafael Ortiz–Carrion, Sol. Gen., San Juan, P.R., were on brief for defendants, appellants.

Kenneth B. La Quay Rebollo, Rio Piedras, P.R., for plaintiff, appellee.

Before BOWNES and BREYER, Circuit Judges, and ATKINS,* Senior District Judge.

BREYER, Circuit Judge.

This appeal, in a "political discharge" case, presents an unusual variation on a familiar theme. *See, e.g., Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Juarbe–Angueira v. Arias,* 831 F.2d 11 (1st Cir. 1987); *Jimenez–Fuentes v. Torres Gaztambide,* 807 F.2d 230 (1st Cir.1986); *De Abadia v. Izquierdo–Mora,* 792 F.2d 1187 (1st Cir.1986). Like the plaintiffs in many earlier cases, the plaintiff here, Elba Estrada Adorno, claims that the defendants dismissed her from her job as Personnel Director of the Government Development Bank of Puerto Rico ("Development Bank") for "political" reasons. But, unlike earlier cases, Estrada and the defendants all belong to the *same* political party. The plaintiff claims that the defendants dismissed her, not because of her party affiliation, but because she refused to go along with their plan to base the hiring of others upon political party affiliation. She adds that, after dismissing her as Personnel Director, they compounded their error by failing to arrange another career job for her elsewhere in the civil service. Plaintiff argues that her dismissal violates the federal Constitution, *see Elrod,* 427 U.S. at 372–73, 96 S.Ct. at 2689–90 (threat of dismissal for failure to support favored political party infringes on protected belief and associa-

* Of the Southern District of Florida, sitting by    designation.

tion, and violates first and fourteenth amendments); *Branti*, 445 U.S. at 517, 100 S.Ct. at 1294 (discharge due to political affiliation violates first and fourteenth amendments), 42 U.S.C. § 1983 (1982); and that it also violates Commonwealth statutes governing the Development Bank, *see* 7 L.P.R.A. § 551 *et seq.* (1981). She seeks both reinstatement and damages.

The defendants asked the district court to grant them summary judgment as to damages on Estrada's federal claims, on the ground that they enjoy "qualified immunity." They argued that, even if the facts were as plaintiff alleged, at the time she was dismissed the law did not clearly forbid her dismissal. The district court denied their motion, 678 F.Supp. 948, and defendants have taken an interlocutory appeal. *See Mitchell*, 472 U.S. at 530, 105 S.Ct. at 2817 (denial of a summary judgment motion based on qualified immunity is immediately appealable, if it turns solely on issues of law); *De Abadia*, 792 F.2d at 1190 (qualified immunity issue appealable even if the case also involves claims for injunctive relief, which are not subject to the qualified immunity defense). In our view, defendants are correct; the law is not clear, and the district court therefore should have found that they are immune from damages as to plaintiff's federal claims based on her discharge and on defendants' failure to find her a different job.

1. The key facts, as Estrada states them, are as follows: From March 1980 to February 1985 she worked in a career civil service position in the Department of Housing in Puerto Rico. In February 1985, soon after the Popular Democratic Party won the gubernatorial election, Estrada, a member of that party, was made personnel director of the Development Bank; this job was a non-tenured confidential or trust position. Estrada says that during 1985 the defendants pressured her to recommend and to accept job applicants as a form of political patronage. She says that she opposed patronage hiring and that in 1986 the defendants dismissed her because of this opposition. Estrada also claims that, when defendants dismissed her, they did not give her back her old job in the Housing Depart-

ment, nor did they find any other career position for her. All this, she says, violates federal law, and, she adds, the violations were sufficiently clear, in light of the law as of 1986, to entitle her to damages as well as to injunctive relief.

where a plaintiff asserts that a government official has subjected her to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983, the official enjoys a "qualified immunity" from liability for damages. He is immune unless, at the time he took action, the right at issue was clearly established. *Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (for an official to be liable for damages, the unlawfulness of his conduct must be apparent in light of preexisting law); *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982) (state official is immune from damages liability unless his action violates a right that was "clearly established" at the time the action occurred, so that he "could be expected to know that his conduct would violate statutory or constitutional rights."). Here, we can find no *clearly established* federal right not to be dismissed for refusing to use political affiliation as a criterion for hiring Bank employees.

For one thing, we have found no federal case holding that it violates the federal Constitution to use political criteria for *hiring* state employees, even in circumstances where it might violate the federal constitution to *dismiss* them for political reasons. The only case we have found directly on point, a 1986 decision, describes the issue as one of first impression and holds that using political factors in hiring does *not* violate the Constitution. *Avery v. Jennings*, 786 F.2d 233, 237 (6th Cir.1986) (weighing political factors in hiring does not violate unsuccessful applicants' free speech rights). In a dissenting opinion, Justice Marshall has expressed the view that the fourteenth amendment requires that government employers act fairly and reasonably in hiring, *Board of Regents v. Roth*, 408 U.S. 564, 588, 92 S.Ct. 2701,

2714, 33 L.Ed.2d 548 (1972) (Marshall, J., dissenting), but a majority of the Court has not adopted this view.

Appellant argues that, nonetheless, the use of political criteria to hire Development Bank employees clearly violated *Commonwealth* law. She points to Puerto Rico's Public Service Personnel Act, 3 L.P.R.A. §§ 1301–1431 (1978), which says that even "agencies or instrumentalities," such as the Development Bank, to which the provisions of the Act do *not* apply, "shall adopt ... a personnel regulation embodying the merit principle." § 1338. She adds that the Act defines the "merit principle" as the "concept that all public employees shall be *selected ...* on the basis of capability, without discrimination on account of ... political ... ideas." § 1411(7) (emphasis added). She also notes that the Supreme Court of Puerto Rico has said that when an excluded agency's own "regulations do not comply with the fundamental purpose of guaranteeing strict application of the merit principle, ... the provisions of the [Personnel] Act ... shall be applied." *Torres Ponce v. Jimenez,* 113 P.R.R. 58, 70–71; translation, 113 P.R.R. 79, 93 (1982). Since the Personnel Act's definition of the merit principle includes hiring without reference to political affiliation, Estrada concludes that, whether or not the Bank had a regulation requiring nonpolitical hiring, Puerto Rico law clearly imposed such a requirement on the Bank in 1986.

The problem with plaintiff's argument is that, even if she is correct about the clarity of Puerto Rico's law, she still has not shown that defendants clearly violated *federal* law when they dismissed her. It is by no means clear whether or to what extent the federal *Constitution* forbids state officials from dismissing employees who refuse to violate state law. It seems unlikely, for example, that the Constitution would protect such employees in an ordinary case where the state law in question has no particular connection with constitutionally protected interests, such as free speech. How much protection the Constitution offers when the state law in question *does* relate to constitutionally protected interests appears unsettled. The plaintiff has not called to our attention any relevant authority. And, the arguably relevant authority we have found suggests that the federal Constitution does not provide protection, but in a context where no clear violation of state law was involved. *See Berry v. Bailey,* 726 F.2d 670, 675–76 (11th Cir.1984) (deputy sheriff, allegedly fired for refusing to obey sheriff's order to drop charges against politically influential arrestees, not protected by first amendment).

Since, under plaintiff's version of the circumstances, we cannot say her dismissal was *clearly* unlawful under federal law, the defendants are entitled to qualified immunity as to plaintiff's federal claim for damages. *See Anderson,* 107 S.Ct. at 3039; *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39.

■ 3. Estrada also seeks damages in respect to a second federal claim. She says that the defendants violated Puerto Rico law, in that, after removing her from her position as personnel director, they did not find her another civil service job. She points to the Personnel Act provision which says,

> Every regular employee in a career position who is appointed to a confidential position shall be entitled to be reinstated in a position equal or similar to the last one he held in the career service.

3 L.P.R.A. § 1350 (Supp.1987). Before she obtained her job in the Development Bank, she held a career position in the Department of Housing. Since her Development Bank job was a confidential position, she concludes that the Personnel Act entitles her to reinstatement to her career position at the Housing department, or a similar position.

Again, since we are reviewing the district court's decision denying defendants' assertion of qualified immunity, we need not determine the legal validity of the plaintiff's argument. We need only decide if defendants' refusal to reinstate her violated federal rights that were "clearly established" in 1986. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. In our view, the law was not then, nor is it now, clearly on

the plaintiff's side. For one thing, as we previously noted, at p. 306, *supra*, the Personnel Act does not apply to the Development Bank. 3 L.P.R.A. § 1338. The Act requires only that the Development Bank follow the "merit principle." *Id.* That principle, as defined in § 1411(7), does not in any clear or obvious way encompass the notion that a former career employee has a right to reinstatement in a career position. We have no reason to think that detailed provisions of the Personnel Act, such as the reinstatement provision we have just quoted, apply to agencies like the Development Bank that the Act specifically excludes from its coverage.

Regardless, for the reasons discussed at p. 306, *supra*, it is not clear that defendants' failure to reinstate Estrada, even were reinstatement required under Puerto Rico law, would violate federal law. Plaintiff's lawsuit rests on a claim that her dismissal was due to "political" factors that the federal Constitution forbids the defendants to take into account. *See Mitchell, supra; Branti, supra; Elrod, supra.* For the reasons discussed at p. 306, *supra*, we have found it unclear whether the federal Constitution forbids the defendants from *dismissing* a Commonwealth employee because she refuses to use political criteria in hiring. It must, therefore, also be unclear whether the federal Constitution forbids the defendants from refusing to reinstate Estrada for those same reasons.

Again, because the state of federal law was unclear when plaintiff was dismissed in 1986, defendants are entitled to qualified immunity.

4. Though defendants' brief raises several other issues, none of them directly turns on the issue of qualified immunity, the only question they may raise on this interlocutory appeal. *Bonitz v. Fair*, 804 F.2d 164, 173–74 (1st Cir.1986) (a defendant does not have a general right to appeal an adverse ruling on summary judgment by raising a qualified immunity defense; any other issue the defendant seeks to raise on appeal must independently qualify as a final, appealable order); *see also Lugo v. Alvarado*, 819 F.2d 5, 8 (1st Cir.1987) (interlocutory review of a discovery order is not permissible just because defendant had raised a qualified immunity defense). Defendant Doble, for example, argues that plaintiff has no reason to sue him, for he did not cause her dismissal and he is not an appropriate subject for injunctive relief. He says he never held a position in the Bank with authority to hire and fire any employee, including plaintiff; he only recommended that the Bank president fire her. Doble is, of course, entitled to qualified immunity for the reasons we have set forth above. Whether or not he is a proper subject for injunctive relief, however, is a question he must present to the district court. If the district court decides against him, he must raise the issue in the course of an ordinary appeal from a final judgment, as required by 28 U.S.C. § 1291 (1982).

The determination of the district court denying qualified immunity is

REVERSED.