Aurora FIGUEROA, et al.,
Plaintiffs, Appellants,

v.

Hon. Awilda APONTE–ROQUE, etc., et
al., Defendants, Appellees.

Aurora FIGUEROA, et al.,
Plaintiffs, Appellees,

v.

Hon. Awilda APONTE–ROQUE, etc., et
al., Defendants, Appellants.

Nos. 88–1525, 88–1526.

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1988.
Decided Jan. 4, 1989.

Frank Rodriguez Garcia, Ponce, P.R., with whom Francisco J. Rodriguez Juarbe was on brief, for plaintiffs.

Carlos Del Valle, Hato Rey, P.R., with whom Hector Rivera Cruz, Secretary of Justice, Rafael Ortiz Carrion, Sol. Gen., and Ramirez & Ramirez, Hato Rey, P.R., were on brief, for defendants.

* Of the Fifth Circuit, sitting by designation.

Before COFFIN and TORRUELLA, Circuit Judges, and WISDOM,* Senior Circuit Judge.

COFFIN, Circuit Judge.

Eight office clerks and a janitor filed suit against top officials in the Puerto Rico Department of Education claiming that their jobs were not renewed because of their political affiliation. A jury found for the janitor against the Secretary of Education, but held for the defendants on all other claims. Both sides appeal. We uphold the jury's verdict except in the janitor's case, in which the plaintiff failed to demonstrate a causal link between the Secretary and the alleged harm to her.

We shall consider first the case involving the clerical employees, outlining the factual background of their discharges in Section I and examining the issues raised on appeal in Section II. We then, in Section III, shall turn to the janitor's case.

## I.

Until the spring of 1985, the eight plaintiffs-appellants worked as office clerks in various schools in the Yauco School District in Puerto Rico. Their positions were "transitory," meaning that they were hired for a fixed term, which in this instance was eleven months. Although the jobs technically would end each June 30, the customary practice was for the appointments to be renewed at the start of the next school year. Four of the appellants had been in their jobs for four years, and the others had been employed for either a year or eighteen months.

The jobs held by plaintiffs were categorized as "comparability" positions, named for a federal program under the Elementary and Secondary Education Act, 20 U.S.C. §§ 2701–3386, in which federal funding for the positions is contingent on all schools in a certain area receiving services "comparable" to services provided in other areas of the district. See also 20 U.S.C. § 3807(c) (describing comparability requirements).

Consistent with the usual practice, appellants received form letters in April 1985 notifying them that their transitory appointments would end on June 30. During the summer, however, they learned that their positions would not be renewed for the fall term starting in August. Awilda Aponte Roque, who had been named Secretary of Education in January, testified that she froze all transitory comparability positions throughout Puerto Rico for the fall semester pending completion of a study to determine which schools needed such positions to fulfill the federal requirements. The Department of Education at that time was operating under a Consent Order that specified certain comparability obligations for Puerto Rico schools, including the requirement that positions be assigned in the fall in accordance with comparability studies performed the previous March. *See Lopez Perez v. Bell,* Civil No. 80–2352 (JP).

Aponte also had changed hiring procedures for classified personnel shortly after she took over the Department of Education.[1] Circular Letter 16–84–85 provides that vacancies at the school district level will be filled by a three-person committee comprised of the school superintendent, the director of the school with the vacancy, and a representative of the regional director. The committee is supposed to reach a consensus on which applicant to recommend for the job. In the absence of consensus, the choice is made by the regional director.

Clerical comparability positions similar to the ones in which appellants had been employed were reassigned for the semester beginning January 1986. In mid-January, the superintendent of the Yauco district, Maria A. Vivaldi, notified appellants to appear for interviews for typist positions. None of the plaintiffs were selected for the three positions filled through that interview process. The applicants chosen were all members of the Popular Democratic Party, which was Aponte's party and the party that had come to power in the 1984 gubernatorial election. Appellants are all members of the New Progressive Party.

Appellants claim that their annual appointments were not renewed, and that they were not chosen to resume clerical duties in January, solely because of their political affiliation.[2] Their theory is that Aponte froze their jobs to clear out NPP members from the comparability program, and then used the new hiring procedure outlined in Circular Letter 16–84–85 to ensure that the comparability positions would be filled by members of the PDP. This can be accomplished, appellants explain, because the regional director makes the decision about whom to hire when the three-person hiring committee fails to agree, and the regional director is a political appointee who inevitably will choose a party faithful.

After a five-day trial, the jury returned a verdict for defendants. Appellants now claim that this verdict was against the weight of the evidence and that improper instructions unfairly prejudiced the jury in favor of the defendants. We shall consider each argument in turn.[3]

---

1. Employees of the Department of Education are divided into teaching personnel and classified personnel, the latter including secretaries, typists and janitors. Jobs within the department are further divided into career (permanent) positions and transitory (temporary) positions. Plaintiffs were transitory, classified employees working within the comparability program.

2. Plaintiffs do not allege a separate cause of action based on their failure to be hired in January 1986. They claim only that they were wrongly denied *renewal* of their jobs because of their political affiliation. The district court allowed testimony on the January hiring procedure into evidence on the ground that it was relevant to the non-renewal claim.

3. We reject appellants' suggestion that we review the facts in political discharge cases de novo, as in cases involving free speech. *See Bose Corp. v. Consumers Union of the United States, Inc.,* 466 U.S. 485, 498–511, 104 S.Ct. 1949, 1958–64, 80 L.Ed.2d 502 (1984); *Brasslett v. Cota,* 761 F.2d 827, 839–40 (1st Cir.1985). We previously have adhered in political discharge cases to the traditional standard of review, and we see no reason to depart from that practice at this time. *See, e.g., Gierbolini Colon v. Aponte Roque,* 848 F.2d 331, 333 (1st Cir. 1988) (district court findings must be accepted unless we are " 'left with a definite and firm conviction that a mistake has been committed' ") (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)); *Estrada Izquierdo v. Aponte Roque,* 850 F.2d 10, 14 (1st Cir.1988) (same); *Kercado*

## II.

Appellants presented extensive evidence to the jury of their theory of political retaliation. They attempted to show that Aponte's decision to freeze comparability positions conflicted with the Consent Order, and therefore was not justifiable as an effort to comply with federal comparability requirements. They emphasized that the Consent Order provided that fall assignments be based on a March study of school enrollment and staffing patterns, and that Aponte's professed need to conduct a study in the fall before allocating comparability positions was therefore simply a pretext.

In addition, several appellants testified that the three women hired to replace them were inexperienced and had trouble completing the typing test administered at the January 1986 interview session. Testimony also revealed that of the eight schools where appellants previously had worked, only three had directors who were PDP members, and those were the only schools to which comparability clerks were assigned when the freeze was lifted.

■ For plaintiffs to prevail on their argument that they are entitled to a new trial because the jury misperceived the evidence, we must find that the jury's findings were " 'so clearly against the weight of the evidence that they produce a manifest miscarriage of justice.' " *Union Mutual Life Insurance Co. v. Chrysler Corp.*, 793 F.2d 1, 6 (1st Cir.1986) (quoting *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 200 (1st Cir.1980)). We do not so find. Although appellants' evidence was sufficient to allow a jury to find in their favor, a review of the record as a whole makes it clear that the jury also was justified in reaching the opposite conclusion.

The evidence showed that *all* transitory clerk-typists in the comparability program throughout Puerto Rico were released in the spring of 1985, not just those who belonged to the NPP. Although there was evidence that the three women hired in January 1986 in the Yauco district were all PDP members, plaintiffs did not show that only PDP members were hired for such positions throughout Puerto Rico after the freeze. Although the only three comparability clerks hired in the Yauco district were placed at schools with PDP directors, there also was evidence that non-clerical comparability positions were assigned to schools with NPP directors.

Evidence that employees lost jobs regardless of political affiliation, and that new employees were placed in schools regardless of the director's politics, supports Aponte's assertion that the freeze was motivated by valid administrative concerns rather than politics. Although the freeze may have appeared inconsistent with one part of the Consent Order, the jury was entitled to believe Aponte's testimony that she thought a freeze was necessary so that a study could be done to ensure that positions were allocated in compliance with the Order.

In addition, the defendants presented evidence suggesting that at least two of the women hired as clerk-typists in January 1986 had superior credentials to appellants. The jury was entitled to credit documentary evidence of their qualifications over appellants' claims that the women appeared incapable of performing the job.

This is not a case like *Fernandez v. Chardon*, 681 F.2d 42, 56 (1st Cir.1982), *aff'd sub nom. Chardon v. Fumero Soto*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983), cited by appellants, where the plaintiffs' evidence included direct statements made by defendants that the then-in-power NPP administration intended to "clean out" members of the PDP in temporary positions. These statements included an assertion by the Secretary of Education that the NPP would seek to keep PDP members out of available jobs. There is no such direct evidence of discrimination by the defendants here.[4] This case turned largely on the

---

*Melendez v. Aponte Roque*, 829 F.2d 255, 264 (1st Cir.1987) (same). These cited cases involve judicial factfinding. In the case of a jury trial, we are of course bound by an even more defer- ential standard of review. *See Wagenmann v. Adams*, 829 F.2d 196, 200 (1st Cir.1987).

**4.** Plaintiffs did present evidence that Francisco Pelliccio, a school director, stated that only PDP

credibility of the government's witnesses, and it is not our place to second-guess the jurors' conclusion that appellants' terminations were not based on their political affiliations.[5]

As for appellants' challenges to the jury instructions, we note first that they failed to raise timely objections at trial. We therefore will reverse the judgment only if "there is plain error in exceptional or under peculiar circumstances to prevent a clear miscarriage of justice," *Kelley v. Schlumberger Technology Corp.*, 849 F.2d 41, 44 (1st Cir.1988) (quotation marks and citations omitted). We find no such error here. The only significant claim of error in the jury charge concerns the instruction on the rights of transitory employees.[6] Appellants take issue with the suggestion that transitory employees are protected from politically motivated termination only if they have been "regular employees ... regular in the sense that they have been for a number of years, for number of—more than one term, employees in a given agency...."

Appellants are correct that transitory employees are protected from politically motivated non-renewals regardless of the number of years they have served. *See Cheveras Pacheco v. Rivera Gonzalez*, 809 F.2d 125, 128 (1st Cir.1987) (holding that

*Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) apply to the right to retain public employment).[7] The court's mistaken instruction might have been significant had the jury rendered a verdict only for the four appellants who had been employed for more than one term. But the jury did not distinguish among these appellants, and it is therefore obvious that the length of tenure did not affect the jury's decisionmaking. Because there was no harm caused by the court's error, there is no basis for vacating its judgment and granting a new trial.

## III.

Appellant Luz Maria Ramirez began working as a janitor in the David Antongiorgi School in the town of Sabana Grande in 1974 in a federally funded program. Her position was for a fixed term that was renewed annually. In September 1983, she was appointed to replace temporarily a career janitor, Marcelino Lopez, who had requested a leave of absence because of illness. The appointment, which initially was extended to January 6, 1986, meant that she was paid directly by the Puerto Rico Department of Education, and was no longer part of the federal program.

members would be appointed to secretarial or clerk-typist positions in the comparability program. No evidence was presented that any other government official shared this viewpoint.

**5.** The jury was given interrogatories asking, with regard to each plaintiff, whether "the personnel actions taken ... were the result of political discrimination because of their party affiliation." The answer was "No" for each of the eight clerical plaintiffs.

**6.** Appellants' other claims of error involve the court's instruction on the burden of proof and the court's response to the jury's request to rehear the instruction on supervisory liability. At oral argument, appellants indicated that their complaint with the burden of proof instruction has to do with its diversion from the model of proof set out for discrimination cases in *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The district court need not conform to any specific script in describing the elements of the

plaintiffs' case, however, and in this instance the court adequately conveyed the burden a plaintiff faces in a political discharge case brought under 42 U.S.C. § 1983. We note that the instruction did not prevent the jurors from finding political discrimination in the janitor's case.

In addition, we fail to see how the court's references to "due process" and "proximate cause"—although perhaps inappropriate—caused any harm to plaintiffs.

**7.** The district court may have been confused by our statement in *Cheveras Pacheco* that the distinction between employees discharged from a permanent position and those who fail to receive a new appointment "is *particularly* invalid in the case of an employee like the plaintiff here who has *long been* employed in a supposedly transitory position." 809 F.2d at 128 (emphasis added). Although a long-tenured "temporary" employee "particularly" enjoys the protections described in *Elrod* and *Branti*, a one-term employee also is protected from political discharge.

In January 1986, Ramirez's substitute position was renewed through June 30 of that year. In February, however, Lopez retired, and his position was opened to be filled on a permanent basis through the regular hiring procedures outlined in Circular Letter 16–84–85. Although Ramirez was a candidate, she was not chosen. The job instead went to Fabian Arce, a PDP ward president.

The selection committee for the job consisted of the Sabana Grande school superintendent, Boris Nilda Velez de Santos; the director of the David Antongiorgi School, Elsie Atresino; and a representative of the regional director of the Mayaguez region of the Department of Education, Carlos Lopez. Testimony at trial showed that Ramirez received a rating of 92, two other candidates received a rating of 85, and Arce was one of seven candidates rated at 80. The school superintendent and the school director recommended Ramirez. Because Lopez recommended Arce, the decision was referred to the regional director, Brackley Rivera, who chose Arce.

Rivera testified that he selected Arce because the David Antongiorgi School was in disrepair, and he needed a janitor with handyman skills to fill the permanent position there. According to Rivera, he consented to the transitory appointment of Ramirez to fill in for Lopez because she was a woman from the local neighborhood, and there was a need for a woman to clean the girls bathrooms at the school. Once the position was to be filled on a permanent basis, however, he said he chose someone whose skills would be helpful in light of the overall physical needs of the school. It is not clear from the record whether the rating system for the applicants took into account the specific needs of the school.

The two defendants in this case, Secretary of Education Aponte and Assistant Secretary for Personnel Alba Caballero Fuentes,[8] both testified that they do not participate in the selection of classified personnel for the school district level, and that

Circular Letter 16–84–85, described *supra* at p. 949, governs hiring for classified positions. Aponte stated that she did not know any of the plaintiffs in this case, and that she was unaware of their political affiliations. Caballero was no longer employed by the Department of Education at the time Arce was selected for the janitorial position.

At the close of plaintiff's evidence, and again at the close of trial, defendants moved for a directed verdict under Fed.R. Civ.P. 50 on three grounds: (1) there is no causal connection between defendants' conduct and the alleged discriminatory act; (2) defendants are entitled to qualified immunity on plaintiff's damages claim because it was not clearly established that a politically motivated failure to hire violated the First Amendment, and (3) the failure to hire cause of action is not actionable under 42 U.S.C. § 1983, and therefore neither damages nor injunctive relief is available. The district court denied the motions, and the jury found in favor of Ramirez against Aponte. The Secretary filed a motion for judgment notwithstanding the verdict based on the absence of a causal connection between her and the alleged harm. That motion also was denied.

On appeal, the Secretary claims that the district court erred in denying her motions for directed verdict and judgment n.o.v., reiterating her three arguments concerning causation, qualified immunity and the nonexistence of a failure to hire cause of action.

### IV.

We note at the outset of our discussion that we do not treat this case as involving a failure to hire. Plaintiff's complaint alleged a *removal* from her position for political reasons and the primary relief sought was reinstatement to the transitory position she had held. The district court also considered the case to concern a discharge rather than a failure to hire and, based on the jury's verdict, it ordered Ramirez rein-

---

8. Zaida Robles, assistant secretary for personnel after Caballero, also was named as a defendant, but the district court granted her motion for directed verdict after plaintiffs completed their presentation of evidence.

stated to a transitory job. In light of this history, we shall review this case as involving plaintiff's dismissal from her transitory position rather than her nonselection for the career job.

We therefore need not consider whether, and in what circumstances, a failure to hire based on political affiliation would be actionable. Nor need we address the qualified immunity issue, although we think it fairly obvious that the law was not—and is not—clearly established that hiring based on politics violates the Constitution. *See Estrada–Adorno v. Gonzalez,* 861 F.2d 304, 305–06 (1st Cir.1988).

We focus instead on defendant's claim that there is no evidence that she was responsible for the discriminatory nonrenewal of plaintiff's transitory janitorial job. In evaluating whether a court properly denied a motion for a directed verdict or a judgment n.o.v., we must examine the evidence and the inferences to be drawn from it in the light most favorable to the non-movant. *Wagenmann v. Adams,* 829 F.2d 196, 200 (1st Cir.1987); *Fishman v. Clancy,* 763 F.2d 485, 486 (1st Cir.1985). We may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. *Wagenmann,* 829 F.2d at 200. The question is whether, with the constraints we have just acknowledged, the evidence is such that reasonable persons could reach but one conclusion. *Id.*

■ Because there is no *respondeat superior* liability under section 1983, Aponte may be found liable only on the basis of her own acts or omissions. *Cristobal Miranda v. Gimenez Munoz,* 770 F.2d 255, 260 (1st Cir.1985). Supervisors need not have personal knowledge of the alleged violation, however, if they were indirectly responsible for or could have prevented the challenged act. *Id.*

■ Appellee Ramirez relies heavily on *Fernandez v. Chardon,* 681 F.2d 42 (1st Cir.1982), *aff'd sub nom. Chardon v. Fumero Soto,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983), to support the jury's verdict that Aponte caused her discharge based on political affiliation. In *Fernan-*

*dez,* the defendants also were the Secretary of Education and the Assistant Secretary for Personnel. The evidence showed that the personnel administrator sent a memo under the signature of an assistant to the Secretary of Education announcing that nonpermanent positions in the Department would be filled by competition for the upcoming school year. The Secretary of Education saw the letter, and discussed it with his assistant. A number of changes and demotions took place in the Department as a result of the memo. When asked about the changes, the Secretary remarked that the then-in-power NPP would take care that PDP members would not fill the many vacancies left in the Department.

In *Fernandez,* we found a sufficient causal connection between actions taken by the Secretary of Education and plaintiffs' discharges to uphold the jury's verdict for plaintiffs. Ramirez contends that this case is just like that one, and that Aponte's responsibility is even more obvious because she was the one who signed Circular Letter No. 16–84–85 announcing the new hiring procedures for classified personnel. She argues that we should uphold the jury's verdict here because the evidence showed that the hiring procedure adopted by Aponte in the Circular Letter was designed to exclude NPP members from jobs, and that that procedure is what caused Arce's selection over her.

We have several problems with this theory. First, we observed in *Fernandez,* 681 F.2d at 56, that the evidence was "less than overwhelming," but that we believed it was sufficient because of the "critical" evidence that the Secretary of Education had expressly stated that the NPP would take care to fill vacancies only with its party members. There is no such direct evidence of a discriminatory intent here.

Second, and more significant, is that Ramirez claims Aponte's link to the personnel actions taken against her is the new *hiring* procedure outlined in the Circular Letter. Although Aponte may well have devised a hiring system that would lead inevitably to the selection of PDP members for any

available opening,[9] Ramirez's complaint is not that she was improperly denied a chance to be hired because the hiring criteria included political affiliation. Rather, as we noted above, her complaint is that she was not *retained* because of her political affiliation.

The record is devoid of any evidence showing that Aponte was involved in the decision not to continue Ramirez in her temporary job. Indeed, there seems to be no dispute that the action triggering Ramirez' loss of job was the retirement of Marcelino Lopez, which opened up his position on a permanent basis. In her brief, Ramirez states that upon Lopez's retirement, Boris Nilda Velez, the school superintendent, contacted the regional director about opening "the position up to competition or to interview." Ramirez does not contend that Aponte played any part in deciding her temporary job should end, and the position filled on a permanent basis, when Lopez retired. There is no evidence even suggesting that the decision to fill the position permanently upon Lopez's retirement departed from the usual practice.[10] Nor is there evidence that the normal practice in filling a newly opened position is to retain an employee temporarily doing the job.

We note that, at oral argument, defendant's counsel indicated that Ramirez remains eligible for a transitory janitorial position such as the one she held before serving as a substitute for Lopez. Although we question why she was not returned to such a position when the replacement job for Lopez ended,[11] there is no evidence connecting Aponte to that particular issue.

In sum, Ramirez failed to show how Aponte was connected with the alleged harm to her, i.e. the termination of her transitory janitorial job. We therefore conclude that the district court erred in denying defendant's motion for a directed verdict or judgment n.o.v.

AFFIRMED IN PART, REVERSED IN PART.

---

9. We offer no opinion at this time on whether we would uphold a jury verdict that Aponte was causally connected to a decision not to hire simply because it issued the Circular Letter. Indeed, the question whether a failure to hire based on political affiliation is *ever* actionable remains unresolved in this circuit. *See Estrada–Adorno v. Gonzalez,* 861 F.2d 304, 305–06 (1st Cir.1988).

10. The school superintendent testified that the regular procedure was to open a position to competition upon the incumbent's retirement.

11. Indeed, we note appellee's undisputed assertion that Arce remains employed at the school along with Ramirez, who was reinstated to a transitory job in accordance with the district court's order. In light of defendant's statement at oral argument, we would expect—although we may not order—that both would remain employed if Ramirez were still interested in a transitory position.