Angelica **SAQUEBO**, Plaintiff,

v.

**Awilda Aponte ROQUE, et al., Defendants.**

**Civ. No. 87–1711(PG).**

United States District Court, D. Puerto Rico.

June 30, 1989.

---

Jesús Hernández Sánchez, Santurce, P.R., for plaintiff.

Rebeca F. Rojas, Federal Litigation Div., Dept. of Justice, Com. of P.R., San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

The instant action, filed on December 7, 1987, is brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Pendent jurisdiction over a claim for double damages under Law 100 of 1959, 29 L.P.R.A. § 146,[1] *et seq,* has also been invoked.

Plaintiff is an active member of the New Progressive Party, the party that lost the 1984 gubernatorial elections. She avers she has openly identified herself with the statehood movement. Plaintiff's basic claim is that she was the victim of political discrimination for the non renewal of her contract with the Department of Education ("DOE"). Plaintiff was employed by DOE and worked under contract at the Technological Institute of the Town of Manatí. She started under contract in 1982 and worked for five years up to 1987, when her contract was not renewed.

Plaintiff makes two claims of discrimination. First, she makes an allegation of removal from her position for political reasons. She alleges that her contract was not renewed and that a new teacher was brought to replace her. It is further alleged that the new teacher was a member of the Popular Democratic Party. The complaint states as follows:

> "That in the term of her contract's end, her contract was not renewed and a new Teacher was brought to teach English to replace plaintiff, being this new Teacher a member of the Popular Democratic Party." (Complaint, paragraph 5).

Plaintiff next argues that discriminatory conduct was evinced when subsequently

---

1. A motion for leave to amend the complaint was denied by the U.S. Magistrate on June 15, 1988 (docket # 13).

she applied for different posts that became available and was not considered for those positions. The complaint alleges: "During the month of February 1987, plaintiff applied for different posts such as Teacher of English and Social Sciences. On August 30, 1987, the position of Teacher of Social Sciences became vacant...." (Complaint, paragraph 6). Plaintiff alleges that she expressed her interest in the position but maintains that all defendants conspired to violate her civil rights. She claims that defendants discussed between themselves plaintiff's political affiliation and decided not to recommend her appointment to the post of Social Sciences Teacher because she is a member of the New Progressive Party. (Complaint, paragraph 17).

As remedies plaintiff has requested damages and the penalties under Law 100 of 1959, 29 L.P.R.A. § 146.

A motion for summary judgment filed by defendants is pending before us.

At the core of Fed.R.Civ.P. 56 is the understanding that the party seeking summary judgment bears the initial responsibility of informing the district court of the bases for its motion and of identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Robinson v. Monaghan,* 864 F.2d 622, 623 (8th Cir. 1989).

Under the provisions of Fed.R.Civ.P. 56 the motion for summary judgment may be and should be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment as set forth by subsection (c) of the rule is satisfied.

Subsection (c) of Fed.R.Civ.P. 56 provides in pertinent part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Based on the uncontroverted evidence on record the Court herein makes the following

### Findings of Fact

1. Plaintiff is a member of the New Progressive Party and favors statehood for Puerto Rico.

2. Plaintiff worked as a teacher on a contract basis with the Department of Education ("DOE") at the Technological Institute in Manatí.

3. The Technological Institute of Manatí is like a community college, where a student receives an associate degree in a particular area. The number of classes depends on the number of students needing that particular class.

4. Plaintiff was appointed to a position and she taught English and Spanish courses.

5. Plaintiff started working in 1982 and worked for five years.

6. Plaintiff occupied a transitory position.

7. Plaintiff's contract expired every year and she had to apply and be interviewed for available positions at the beginning of each school year.

8. On June 1987 plaintiff's contract was not renewed.

9. For the first semester of the 1987–1988 school year, upon the non-renewal of plaintiff's contract, two English courses formerly taught by plaintiff were assigned to a career employee with the DOE.

10. For the second semester of the 1987–1988 school year the position formerly occupied by plaintiff was eliminated.

11. On September 3, 1987, a position of Related Technical Courses at the Technological Institute in Manatí became vacant.

12. Plaintiff applied for the position and was interviewed but was not selected.

13. The position which became vacant required some knowledge of law and was occupied by an attorney.

14. An attorney was chosen to occupy the position.

*Non–Renewal of Plaintiff's Contract*

Plaintiff's first raised claim is the one which relates to the non renewal of her contract. Plaintiff has alleged that another teacher was brought to teach courses which were assigned to her. She further challenges the action alleging that she had received excellent evaluations.

▬ As stated thru our findings of fact, plaintiff worked under a contract which was to be renewed on a yearly basis. Thus, she was under a fixed term employment. It has been held that under the Personnel Act a contract employee has a job retention expectancy only during the term of the contract and therefore is not entitled to a permanent status. *See, Cordero v. De Jesús Méndez*, 867 F.2d 1, 21 (1st Cir.1989), *reh'g denied* on March 7, 1989. Furthermore, even transitory employees are protected from politically motivated nonrenewals regardless of the number of years they have served. *Figueroa v. Aponte Roque*, 864 F.2d 947, 951 (1st Cir.1989); *Cheveras Pacheco v. Rivera González*, 809 F.2d 125, 128 (1st Cir.1987). In the instant case, plaintiff does not describe any promises or representations made that might give rise to a property interest in employment beyond the expiration date of the contract. Yet, it has been acknowledged that the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs. *Elrod v. Burns*, 427 U.S. 347, 360 n. 13, 96 S.Ct. 2673, 2683 n. 13, 49 L.Ed.2d 547 (1976); *Cheveras Pacheco v. Rivera González, supra*, at 127–28; *Roure v. Hernández Colón*, 824 F.2d 139, 141 (1st Cir.1987); *Santiago Negrón v. Castro Dávila*, 865 F.2d 431 (1st Cir.1989). Thus, the non-renewal of a one-year contract may not be predicated on the exercise of First and Fourteenth Amendment rights. *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Keyishian v. Board of Regents of University of State of N.Y.*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

▬ It is clear that the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs. No distinction should be made between employees discharged from a permanent position and those who fail to receive a new appointment. *Accord, McBee v. Jim Hogg County, Tex*, 730 F.2d 1009, 1015 (5th Cir.1984). A contract employee cannot be discharged in violation of the First Amendment right to free speech and association. *Perry v. Sindermann*, 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972); *Cordero v. De Jesús Méndez, supra*, at 21.

In *Perry v. Sindermann, supra*, the Supreme Court held that nonrenewal of a college professor's contract would violate the First Amendment if it were based on his protected free speech even if the professor lacked a property interest in continued employment. The property right question is governed by state law, *Perry v. Sindermann, supra*. In Puerto Rico, as established by *Báez Cancel v. Mayor of the Municipality of Guaynabo*, 100 P.R.R. 980 (1972), irregular and temporary employees have a right to be protected from political discrimination.

In *Báez Cancel, supra*, at 985, the Court said:

> Section 1 of Art. 11 of the Constitution of the Commonwealth of Puerto Rico prescribes in a clear manner that "no discrimination shall be made on account of race, color ... political or religious ideas." The proscription of discrimination is clear and final. Its text does not permit any distinction. It means to say what it says. That the State in any of its multiple functions or services shall not discriminate against a citizen because of the mere fact that the latter is colored, an atheist or on account of his political ideas. Any other construction would enervate its efficacy. To strengthen it and not to weaken it is our duty, as the principal custodians of the Constitution.
>
> \* \* \* \* \* \*
>
> To limit its application ... to those employees who have permanency under the Municipal Merit System is to force a dis-

tinction contrary to its true spirit and purpose. Such a construction would precisely have the more helpless destitute of protection.

The Supreme Court has insisted that property interests must "stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 597, 92 S.Ct. 2701, 2697, 33 L.Ed.2d 548 (1972).

■ In the instant case, defendants challenge plaintiff's contention that political discrimination was the force behind the non-renewal of plaintiff's contract. Here, however, plaintiff has failed to generate a genuine issue of material fact regarding the allegation that the non-renewal of her contract was politically motivated. Furthermore, plaintiff has simply made subjective allegations and these fail to controvert the objective evidence submitted.

Concerning the issue of non-renewal, the record does establish that at the expiration of her contract in 1987 another teacher was brought to teach English classes which had been assigned to plaintiff. Nevertheless, this teacher was a *regular employee* of the Department of Education. Pursuant to the applicable regulations the positions available have to be filled by regular employees before transitory employees are hired.[2]

The appointment of Mr. Héctor Galarza, who took over those courses, was not made contravening the regulations because as a regular career employee he had priority over contract employees as plaintiff. Plaintiff herself has recognized this fact in her deposition[3] (taken on August 2, 1988), where at page 24 she expressed:

"Well, the reason why I did not make any request or complaint was because they told me that Galaza (sic) was a permanent teacher with the Department of Instruction."

Moreover, it appears that following the first semester after her non-renewal the courses were cancelled and the career employee who was appointed to take plaintiff's courses was assigned to another district. This fully supports defendants' allegations that there was no demand for the courses plaintiff taught and that her non-renewal was motivated by reasons other than mere political consideration. *See, Figueroa v. Aponte Roque,* 864 F.2d 947 (1st Cir.1989).

Specifically the sworn statement[4] of Mr. Elí Martínez Ríos, highlights the aforementioned facts and undermines plaintiff's allegations of political reasons for the non-renewal of her contract.

Mr. Martínez Ríos, who admits he belongs to the same political party as plaintiff, states that he has been working for the Department of Education for the last 25 years and for the last thirteen as school superintendent of Manatí. He clarifies that Mrs. Saquebo's contract expired each year and that plaintiff had to apply and be interviewed each year for a position at the Institute. He states under oath that Saquebo's contract was not renewed because there were only two classes available for her position which did not justify the one-year contract, and that the position occupied by plaintiff was eventually eliminated. He further states that Mr. Héctor Galarza, a regular career employee with the DOE, who did not have any duties at the time and was qualified to teach at a graduate level having a Master's degree in English, had *priority* over contract employees. Mr. Galarza was assigned to teach the two English courses at the Institute the first semester of 1987. The sworn statement finally states that for the second semester of 1987, from January until May, the applications did not justify Mr. Galarza's appointment at the Institute, and he was assigned a full-time teaching position at the School District of Florida.

The fact that it was almost three years after the governmental elections that her

---

2. See circular letter number 13–86–87 of May 22, 1987; Exhibit CC. annexed to document #23.

3. Annexed as exhibit L to Dkt. #23.

4. Affidavit 227 sworn before Notary Public Eileen Loiz Reyes, annexed as exhibit K with defendants' memorandum of law in support of motion for summary judgment (Dkt. #23).

contract was not renewed also undermines plaintiff's allegations. The contract was renewed two years after the change in the government's administration. The uncontroverted evidence submitted shows that plaintiff's contract was not renewed because of the shortage of student enrollment and classes which led to the eventual elimination of the position. That is, plaintiff's services were no longer needed due to the number of applicants for a particular class or degree, and the courses, as well as the position she held, were eventually eliminated. Plaintiff cannot sustain her burden by mere conclusory allegations. *Jiménez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir.1986).

There seems to be no dispute that the non-renewal was based on criteria which failed to sustain or provide any basis for plaintiff's allegations. We conclude that the evidence offered by defendants which has remained uncontroverted suggests that there were no discriminatory reasons behind the non-renewal of plaintiff's contract.

### Non–Selection

We now turn to plaintiff's allegation that she was not hired for other available positions.

 In fact, on September 2, 1987, a position of Related Technical Courses, which encompasses courses in Commerce law, Labor law and social sciences, became available.

At paragraph 18 of the complaint plaintiff alleges that all codefendants discussed plaintiff's appointment and decided not to recommend her appointment because of her political affiliation.

Plaintiff has alleged that her non-appointment for other available positions was also based on political considerations. Defendants maintain that plaintiff was allowed to compete, but other candidates best qualified were selected. In the alternative defendants have alleged that the use

5. See Exhibit S annexed to Dkt. #23.

6. See Exhibit T annexed to Dkt. #23.

of political criterion for hiring is not foreclosed.

The evidence on record discloses that plaintiff was interviewed for the vacant position by the interviewing committee on September 10, 1987. However, plaintiff was not recommended. In turn, an attorney was appointed to that particular position. This position was again available on August 1988, plaintiff was again allowed to compete, but not selected. It appears that this position which became vacant requires some knowledge of law.[5] The position was formerly occupied by an attorney,[6] the person appointed was an attorney,[7] and at present the position is occupied by an attorney.[8]

Thus, with respect to plaintiff's allegations that her nonselection for other available positions was based on her political affiliation, the evidence suggests that other candidates appointed had credentials more consonant with the requirements of those positions: *see Figueroa v. Aponte Roque, supra.*

 Although defendants have denied plaintiff's allegation, it is also clear that plaintiff does not have a federally protected right disallowing the use of political factors in the hiring process.

In *Avery v. Jennings*, 786 F.2d 233 (6th Cir.1986), the Sixth Circuit considered the principles established by the Supreme Court decision in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and held that a public employee hiring system which took into account potential employees' political affiliations was not in violation of any constitutional right.

Therein the Court held:

We hold that although the first amendment prohibits official hiring policies based solely on political affiliation, it does not constitutionalize civil service standards or establish a hard and fast employment rule against weighing politi-

7. See Exhibit DD annexed to Dkt. #23.

8. See Exhibit X, p. 46, annexed to Dkt. #23.

cal factors. Neither Congress, a state legislature, nor a local administrator may "enact a regulation" against hiring members of a particular political party, ..., or exacting a loyalty oath, ..., but elected officials may weigh political factors such as party allegiance along with other factors in making subjective hiring judgments.

*Avery,* at 234.

Under the recent decision in *Estrada-Adorno v. González,* 861 F.2d 304 (1st Cir. 1988), defendants in the instant case are entitled to qualified immunity defense on plaintiff's claims of non-selection due to her political affiliation. We can conclude that defendants are shielded from suit by qualified immunity because there was no law clearly established in plaintiff's favor.

The qualified immunity inquiry is ultimately a question of law. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985); *De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1191 (1st Cir.1986). All the Court need determine is whether the legal norms allegedly violated by defendant were clearly established at the time of the challenged actions. *Mitchell v. Forsyth, supra.* The meaning of "clearly established law" has been refined by the Supreme Court as follows:

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

There is no clearly established law that using political reasons in hiring public employees violates any federally protected right.

*See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Although defendants have denied the use of political factors in the hiring process, qualified immunity is proper on this particular claim because we cannot say that non-selection for political reasons was unlawful under federal law.

Accordingly, plaintiff's claim for non-appointment should be

DISMISSED.

### *State Law Claim for Double Damages*

█ We shall finally turn to plaintiff's request for double damages under 29 L.P.R.A. § 146.

The section provides in pertinent part:

Any employer who discharges, lays off or discriminates against an employee regarding his salary, wage, pay or remuneration, terms, rank, conditions, or privileges of his work, or who fails or refuses to hire or rehire a person, or who limits or classifies his employees in any manner which tends to deprive a person of employment opportunities or to affect his status as employee, on the basis of age, as defined hereinafter, race, color, sex, social or national origin or social position, political or religious beliefs of the employee or applicant for employment:

(a) shall incur civil liability

(1) for a sum equal to twice the amount of damages sustained by the employee or applicant for employment on account of such action....

29 L.P.R.A. § 146.

However, defendants maintain that the section is inapplicable to the instant case since it excludes government agencies falling outside the category of employer as specifically defined by the statute.

Section 151 defines employer as follows:

(2) "Employer" includes any natural or artificial person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person. It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or enterprises. (underscoring ours)

Defendants have further argued that the Department of Public Education of the Commonwealth of Puerto Rico is not a public corporation which operates as a private business or enterprise and that, therefore, the remedy provided by 29 L.P.R.A. is not available to its employees. We agree.

The argument advanced by defendants has been recently upheld by the Court of Appeals for the First Circuit in the case of *Magda Marín Piazza v. Awilda Aponte Roque,* 873 F.2d 432 (1st Cir.1989), while examining the application of said section. There the Court of Appeals held: "We have been offered no argument, nor can we conceive of one, that the Department of Education qualifies as an agency operating as a private business. That being the case, double damages under § 146 against the defendant in her official capacity is (sic) clearly inappropriate." *Marín Piazza v. Aponte Roque, supra.*

In accordance therewith, the pendent claim made by plaintiff for double damages under 29 L.P.R.A. § 146, *et seq.,* should be and is hereby DISMISSED.

### Conclusion

In passing upon a summary judgment motion the Court must inquire whether reasonable jurors could find for the moving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As stated herein before, the moving party bears the initial burden of directing the Court's attention to these portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett, supra.*

The moving party's burden may be discharged by proving that there is an absence of evidence to support the non-moving party's case. *Celotex Corp., supra.* In the instant case, the standard of Fed.R. Civ.P. 56(c) is met. The motion, as well as the documents submitted in support thereof, establish that there is no genuine issue for trial. Plaintiff has failed to go beyond the pleadings by any of the means provided by the rule and show or designate specific facts showing that there is a genuine issue for trial. *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. at 2553. It is clear that the opposing party cannot rest on allegations or denials of the pleadings to establish the material issue of fact. Fed.R.Civ.P. 56(e); *Securities and Exchange Commission v. Murphy,* 626 F.2d 633 (9th Cir.1980).

We find that defendants have discharged their burden and established the absence of a genuine issue of material fact. The evidentiary matter in support of the motion establishes the absence of a genuine issue, and it has also been demonstrated that undisputed facts entitle to granting the summary judgment as a matter of law. *Jaroma v. Massey,* 873 F.2d 17, 20 (1st Cir.1989).

Therefore, summary judgment shall be entered.

The motion for summary judgment is GRANTED. The complaint shall be DISMISSED.

IT IS SO ORDERED.