Iseut G. **VELEZ RIVERA**,
et al. **Plaintiffs**

v.

Juan **AGOSTO ALICEA**,
et als. **Defendants**

No. CIV. 01–2240(SEC).

United States District Court,
D. Puerto Rico.

Aug. 24, 2004.

Francisco González–Colón, Esq., San Juan, PR, for Plaintiffs.

Ada Nurie Pagán–Isona, Esq., Edwin J. Seda–Fernández, Michelle Taveira–Tirado, Nestor J. Navas–D'Acosta, Rafael Escalera–Rodríguez, Esqs., Reichard & Escalera, Esther Crespin–Credi, Carlos Del–Valle–Cruz, Esqs., Department of Justice, Commonwealth of P. R., Gloria Robinson–Guarch, Esq., Department of Justice, Federal Litigation Div., San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

This is an action for injunctive relief and compensatory and punitive damages brought by Iseut Vélez–Rivera ("Vélez") and Fernando Peña–Castro ("Peña") ("Plaintiffs") against Juan Agosto–Alicea ("Agosto")(President of the Government Development Bank ("GDB") and others ("Defendants") in their individual and official capacity as officials of the GDB).[1] Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging violations of their First and Fourteenth Amendment rights under the Constitution of the United States. Specifically, Plaintiffs claim that Agosto terminated their employment with the GDB because of their political affiliation to the New Progressive Party ("NPP").

Pending before the Court is Defendants' motions for summary judgment requesting the dismissal of Plaintiffs' Section 1983 claims, as well as their claims arising under the laws of the Commonwealth of Puerto Rico (**Dockets ##47, 49, 59 & 114**). In essence, Defendants contend that there are no genuine issues of material fact indicating that Vélez's termination and Peña's cancelled service contract were in fact politically motivated and, that they are entitled to qualified immunity. Plaintiffs have filed their oppositions to Defendants' motions (**Dockets # 105 & 125**).

On December 12, 2003, Defendants' motions were referred to Magistrate Judge Gustavo A. Gelpí for his report and recommendation (**Docket # 98**). Thereafter, on February 20, 2004, the Magistrate issued his report recommending that Defendants' motions be denied in their entirety (**Docket # 106**). Timely objections to the Magistrate's Report were filed by both Agosto and the GDB (**Dockets #112 & 113**).

Upon careful review of the parties' arguments, the Magistrate Judge's Report, Defendants' objections thereto, and the applicable law, we find that Defendants' motions for summary judgment should be **GRANTED** and the case **DISMISSED** as to all claims against Defendants. We proceed to explain.

**Background**

On November 7, 2000, general elections were held in Puerto Rico. The incumbent NPP was defeated by the Popular Democratic Party ("PDP"). As part of a newly elected PPD administration, Co-defendant Juan Agosto Alicea was appointed as president of the GDB on January 2, 2001. Plaintiffs allege that soon after Agosto's arrival, the GDB began taking adverse employment actions against employees who were affiliated with the NPP. The

---

1. The other Defendants are Lilliam Jiménez–Montijo and Alba Caballero–Fuentes. Plaintiff Vélez has brought suit against Defendants GDB, Agosto, Jiménez–Montijo, and Caballero–Fuentes. Plaintiff Peña has brought suit only against the GDB and Agosto.

details of each Plaintiffs' claims are set forth below.

## Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón,* 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, not room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case", *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue . . . . Failure to do so allows the summary judgment engine to

operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

■ Then applicable Local Rule 311(12) (now codified as Local Rule 56(b)), moreover, requires the moving party to "file annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried . . . ." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id. Cosme–Rosado v. Serrano–Rodríguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the non-movant's case down the road toward an early dismissal." *Tavárez v. Champion Products, Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

### Applicable Law and Analysis

■ Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. *See Graham v. M.S. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under Section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds* by *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989); *Saugus v. Voutour*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985).

■ Second, a plaintiff must show that the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt*, 451 U.S. at 535, 101 S.Ct. 1908; *Gutiérrez–Rodríguez*, 882 F.2d at 559. This second prong has two aspects: 1) there must have been an actual deprivation of the plaintiff's federally protected rights; and 2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. *See Gutiérrez–Rodríguez*, 882 F.2d at 559; *Voutour*, 761 F.2d at 819. In turn, this second element of causal connection requires that the plaintiff establish: 1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gutiérrez–Rodríguez*, 882 F.2d at 562; *Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989); and 2) that the defendant's conduct was intentional, *Simmons v. Dickhaut*, 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. *See Gutiérrez–Rodríguez*, 882 F.2d at 562.

■ Moreover, in addressing the issue of supervisory liability within the context of Section 1983 cases, the United

States Supreme Court has declined to find causation where the alleged liability stems merely from an employment relationship. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Following this lead, the First Circuit has emphasized that "supervisors may only be found liable on the basis of their own acts or omissions." *Gutierrez–Rodriguez*, 882 F.2d at 562. Thus, it has held that in order for a supervisor to be found liable under Section 1983, a plaintiff must show: (1) that the supervisor's own acts or omissions deprived plaintiff of a constitutionally protected right; (2) that his "conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others;" and (3) that there was "an 'affirmative link' between the street level misconduct and the action or inaction of supervisory officials." *Id.* at 563. Notice is a salient consideration in determining the existence of supervisory liability. *See Febus–Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 93 (1st Cir.1994) (treating as "[a]n important factor whether [the supervisor] was put on notice of behavior which was likely to result in the violation of constitutional rights"). Nonetheless, supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior; he "may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness." *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 582 (1st Cir.1994).

 To prevail on a political discrimination claim against a defendants, a plaintiffs must establish that: 1) he/she engaged in constitutionally protected conduct; and 2) that this conduct was a substantial or motivating factor in an adverse employment decision affecting him/her. *See Mt. Healthy City School District Bd. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–García v. Rodríguez*, 212 F.3d 69, 74 (1st Cir.2000). To meet this burden, a plaintiff must establish a *prima facie* case by showing that there is a causal connection linking a defendant's conduct to his/her political beliefs. *See LaRou v. Ridlon*, 98 F.3d 659, 662 (1st Cir.1996); *See also Padilla–García*, 212 F.3d at 74. In order to establish a *prima facie* case, a plaintiff may not rely on unsupported speculations, nor are unsworn assertions of fact enough to establish a material factual dispute. *Correa–Martínez v. Arrillaga-Belendez*, 903 F.2d 49, 58 (1st Cir.1990) (stating that merely providing the assertions that the plaintiff and defendant were from opposite political parties was not sufficient to overcome summary judgment). If the record establishes a *prima facie* case, the defendant then has the burden of providing a non-discriminatory basis for the employment action. *See Mt. Healthy*, 429 U.S. at 286–87, 97 S.Ct. 568; *Padilla–García*, 212 F.3d at 78. The defendant must persuade the Court that the non-discriminatory reason is credible. *See Rodriguez–Rios v. Cordero*, 138 F.3d 22, 26 (1st Cir.1998). A plaintiff may then discredit the non-discriminatory motive offered by providing evidence that shows that discrimination was in fact the motivating factor. *See id.*

 The Supreme Court's decision in *Mt. Healthy* established that even if a plaintiff can demonstrate that his/her political affiliation was a substantial factor in the adverse employment action taken against him/her, there is no constitutional violation if the defendant can show both (i) that it would have taken the same action in any event, and (ii) that it would have taken that action for reasons that are not unconstitutional. *See Mt. Healthy*, 429 U.S. at 286–87, 97 S.Ct. 568. Once these two distinct questions have been answered in the affirmative, a finder of fact may

determine that even if political discrimination was a substantial factor in the adverse employment action, the ultimate "but for" cause of the adverse employment action would have been made even in the absence of the plaintiff's protected conduct. *Sánchez López v. Fuentes–Pujols*, 375 F.3d 121 (1st Cir.2004). Therefore, once the defendant proffers a nondiscriminatory reason for the adverse employment action, the plaintiff then has to discredit said reason "by adducing evidence that discrimination was more likely than not a motivating factor." *Padilla–García v. Rodríguez*, 212 F.3d 69, 78 (1st Cir.2000). In other words, it is not true that all a plaintiff needs to show in order to prevail is that political discrimination was a motivating reason for the employment action. The fact that the constitutionally protected activity played a substantial part in the actual decision to take adverse employment action does not necessarily amount to a constitutional violation. *Mt. Healthy*, 429 U.S. at 286–87, 97 S.Ct. 568.

■ Under the Fourteenth Amendment of the Constitution, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must first prove that he/she has a property interest as defined by state law and, second, that the defendant, acting under color of state law, deprived him/her of that property interest without a constitutionally adequate process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *PFZ Properties, Inc. v. Rodríguez*, 928 F.2d 28, 30 (1st Cir.1991).

**Eleventh Amendment Immunity**

■ Defendants aver that they are entitled to Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Am. XI. Although the Eleventh Amendment literally seems to apply only to suits against a State by citizens of another State, the Supreme Court has consistently extended the scope of this Amendment to suits by citizens against their own State. *See Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Even though the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. *See Jusino Mercado v. Commonwealth of Puerto Rico*, 214 F.3d 34 37 (1st Cir.2000); *Ortiz–Feliciano v. Toledo–Dávila*, 175 F.3d 37, 39 (1st Cir.1999); *Futura Development v. Estado Libre Asociado*, 144 F.3d 7,12–13 (1st Cir.1998); *Culebras Enterprises Corp. v. Rivera–Ríos*, 813 F.2d 506, 516 (1st Cir.1987); *Ramírez v. P.R. Fire Services*, 715 F.2d 694, 697 (1st Cir.1983).

■ The Eleventh Amendment bar extends to governmental instrumentalities, which are an arm or "alter ego" of the State. *See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R.*, 818 F.2d 1034, 1036 (1st Cir.1987); *Ochoa Realty Corp. v. Faría*, 618 F.Supp. 434, 435 (D.P.R.1985); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Mt. Healthy City School District v. Doyle*, 429 U.S. at 280–281, 97 S.Ct. 568; *Ursulich v. Puerto Rico*

*Natl' Guard,* 384 F.Supp. 736, 737–38 (D.P.R.1974). In addition, the Eleventh Amendment also protects state officials in their official capacity. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity for monetary relief is an action for the recovery of money from the State. *Ford Motor v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Hence, a claim against a state official for monetary relief is, in essence, a claim against the State.

In the instant case, Plaintiffs have not challenged the fact that all Defendants are afforded immunity in their official capacity for the claims requesting monetary damages. Therefore, since the suit against these Defendants in their official capacities, as well as the claims brought against the GDB, a government entity, is in fact a suit against the Commonwealth of Puerto Rico, Plaintiffs' monetary claims against all Defendants in their official capacities, as well as their monetary claims against the GDB are **DISMISSED WITH PREJUDICE.**

### Plaintiffs' claim under the First Amendment

#### 1) Plaintiff Vélez

On September 7, 2000, Plaintiff Vélez was promoted to Deputy Director of Human Resources at the GDB (Docket # 105, p. 3 ¶ 7).Vélez was given a six (6) month probation period, which was due to expire on March 6, 2001. According to Plaintiff,

her performance throughout the probation period was exemplary. However, on February 15, 2001, Vélez received a letter from GDB's president, Agosto, where he indicated that her probationary period had been extended for an additional three (3) months. Vélez was informed that the reason for this extended probationary period was so that her qualifications for her appointment could be reviewed (Docket # 105, p. 3 ¶ 9).[2] Thereafter, on July 12, 2001, Agosto sent a letter to Vélez indicating that her appointment was null and void due to violations of GDB's personnel regulations and that she was terminated from her employment at the GDB (Docket # 105, p. 3 ¶ 13).

 Plaintiff Vélez alleges that Defendants were well aware of her political affiliation with the NPP. She further avers that although she asked Agosto several times, she was not given an explanation for the extension of her probationary period. Vélez further asserts that she had received good evaluations during her original probationary period and, that she had been deemed "qualified" for the position when she was originally appointed in September of 2000 (Docket # 105, p. 5 ¶ 11–14). However, after examining the record, we find that these are self-serving allegations and that some are contrary to the evidence in the record. Therefore, we find that, even with the broadest of interpretations, Plaintiff Vélez's claim does not amount to a *prima facie* case of political discrimination. We explain.

Plaintiff Vélez admitted in her deposition that she did not mention to anyone at

2. Under Puerto Rico law, there is a period of time, called the electoral moratorium period ("veda electoral"), during which no "movement[s] of personnel" are to take place absent emergencies. *See* 3 P.R. Laws Ann. § 1337. The moratorium period compromises the two months preceding and the two months follow-

ing a general election. *Id.* The law was enacted "[f]or the purpose of guaranteeing the faithful application of the merit principle in public service during the period before and after elections." *Id. See also Sánchez López,* 375 F.3d at 126.

the GDB that she was affiliated to the NPP (*See* Defendants' Statement of Uncontested Facts—Exhibit 21). Furthermore, she also stated in her deposition that she did not know how the people at the GDB knew about her political affiliation and that she assumed or inferred that these people knew because of the way she was treated "differently" by two co-workers (*See* Defendants' Statement of Uncontested Facts—Exhibit 21). Yet, Vélez also states that she never knew the reason why these co-workers treated her "differently." (*See* Defendants' Statement of Uncontested Facts—Exhibit 21). In addition, Plaintiff Vélez states in her deposition that she did not know of any organization of GDB employees affiliated to the NPP and that she was never invited or participated in any activity or meeting related to the NPP (*See* Defendants' Statement of Uncontested Facts—Exhibit 21). Finally, Vélez states that she bases her claim for political discrimination on "[her] understanding" that there was no justified reason for declaring her appointment null and void (*See* Defendants' Statement of Uncontested Facts—Exhibit 21).

■ Accordingly, in this case we find that Plaintiff Vélez has not presented any specific evidence indicating the existence of a political discriminatory animus other than a blanket assertion of being a member of the opposing political party and her interpretation regarding her dismissal. Plaintiff has not provided any evidence showing that she was treated differently than other similarly situated employees because of her political affiliation. In most cases, this failure within Plaintiff's allegations would be sufficient for the Court to find for Defendants on summary judgment; however, assuming in arguendo and for the sake of this opinion, that Plaintiff Vélez has established a *prima facie* case, the next inquiry is whether Defendants have presented a sufficiently non-discriminatory explanation for their actions.

According to Defendants, Vélez was terminated because her appointment to the Deputy Director of Human Resources position was in violation of GDB personnel regulations and the merit principle. In addition, Defendants argue that Plaintiff Vélez has not been able to demonstrate that her political affiliation was the underlying reason for her dismissal from the GDB. In sum, they contend that the GDB had an objective and legitimate non-discriminatory basis to dismiss Mrs. Vélez as Auxiliary Director of Human Resources. We agree with Defendants and find that said reason also conforms to the "but for" burden shifting standard set forth by *Mt. Healthy*. We explain.

The uncontested facts supporting Defendants' motion show that Plaintiff Vélez did not comply with the requirements of the formal job announcement ("convocatoria") for the position of Auxiliary Director of Human Resources. The formal job announcement for the position of Auxiliary Director of Human Resources ("Director(a) Auxiliar de Recursos Humanos") at the GDB dated August 22, 2000, established that prospective job applicants must possess a masters degree from an accredited college or university and comply with the following work experience requirement: five (5) years of progressive professional work experience in duties relating to human resources administration including recruitment of personnel. The job announcement also specified that two of these years must be in functions of supervision of personnel and one in personnel transactions. (*See* Defendants' Statement of Uncontested Facts—Exhibit 1).

The record reflects that, after an independent personnel study conducted at the GDB, it was determined that Plaintiff Vélez had only worked for (1) one year, (5)

five months and 27 days at the Puerto Rican Association for the Well–Being of the Family prior to her appointment. (*See* Defendants' Statement of Uncontested Facts—Exhibit 4, 13 & 15). This experience was as Human Resources Administrator, which counts toward the work experience of five years in Human Resources Administration required by the formal job announcement issued by the GDB. However, the subsequent work experience obtained by Plaintiff in the Office of the Governor does not count in its entirety toward the progressive work experience. As Plaintiff Vélez conceded in her deposition, she only worked for eight months as Director of Administration at the Office of the Governor (*See* Defendants' Statement of Uncontested Facts—Exhibit 15). It was only during this eight-month period that Plaintiff was effectively in charge of the internal human resources at the Office of the Governor, Office of Labor Affairs. (*See* Defendants' Statement of Uncontested Facts—Exhibit 15). Thereafter, from February 1, 1997 to July 15, 1999, Mrs. Vélez occupied again in the Office of the Governor, Office of Labor Affairs the position of Auxiliary in Labor Policy where she was a liaison between the Office of Labor Affairs and the Human Resources Departments at several public corporations. As part of her duties, she was in charge of investigating and drafting opinions regarding labor issues including comparative analysis of collective bargaining agreements and collaboration with the organizational environment at public corporations. (*See* Defendants' Statement of Uncontested Facts—Exhibit 16). As her work description for this position entails, her duties were not related to human resource administration, but rather, on studies and analysis of employer/employee relationships in public corporations. (*See* Defendants' Statement of Uncontested Facts—Exhibit 17).

Then from July 16, 1999 and up to August 4, 2000, Plaintiff Vélez occupied the position of Director of Labor Relations at the Administration of Services and Agricultural Development for a total of one year and 20 days. The functions of this position did not entail human resources administration. (*See* Defendants' Statement of Uncontested Facts—Exhibit 18). Finally, she worked for one month at the Cardiovascular Center of Puerto Rico as Specialist in Labor Relations and dealt primarily with unions. (*See* Defendants' Statement of Uncontested Facts—Exhibit 14).

It is clear from the record that Plaintiff Vélez's work experience in human resources administration could only include her work experience of one year and a half at the Puerto Rican Association for Well–Being of the Family and her work experience of eight months as Director of Administration at the Governor's Office, Office of Labor Affairs. All together, Mrs. Vélez had only two years and two months of work experience in human resources administration. Her other work experiences regarded labor relations and not human resources administration. Thus, Plaintiff's appointment was null and void because it did not comply with the GDB's regulations. Her application should have been rejected *ab initio* for failing to comply with the minimum requirements of the position. Therefore, due to Plaintiff's lack of qualifications for the position at the time she was hired, there is a valid "but for" reason based on non-discriminatory grounds that clearly justify Vélez's dismissal. *See Mt. Healthy*, 429 U.S. at 286–87, 97 S.Ct. 568. Accordingly, Vélez's claims against Defendants for political discrimination under the First Amendment will be **DISMISSED WITH PREJUDICE.**

## 2) Plaintiff Peña

On February 4, 1999, Plaintiff Peña signed a maintenance and miscellaneous service order with the GDB for the following services: "consulting in the sale of equity and debts of hotels, specifically, Mr. Peña will contribute his experience and education in areas such as valuation, negotiation and legal structuring of different transactions" (*See* Defendants' Statement of Uncontested Facts—Exhibit 24). This service order also indicated that Mr. Peña "besides having worked in strategic planning, and corporate mergers and acquisitions for one of the most important banks in Puerto Rico, [Mr. Peña] is currently a student in the University of Puerto Rico Law School" (*See* Defendants' Statement of Uncontested Facts—Exhibit 24). On September 7, 1999, Plaintiff Peña signed another service order indicating that his services would also include "consulting in the area of privatization" (*See* Defendants' Statement of Uncontested Facts—Exhibit 27). Again in December of 1999 and July of 2000, Plaintiff Peña signed additional service orders, similar in nature with the previous ones, with the GDB (*See* Defendants' Statement of Uncontested Facts— Exhibits 29 & 31). None of these service orders contained an expiration date (*See* Defendants' Statement of Uncontested Facts—Exhibits 24, 26, 28 & 30).

Thereafter, on November 21, 2000, Plaintiff Peña signed another service order which substituted his previous ones, however this order stated that it would be effective from November 1, 2000 to June 30, 2001 (*See* Defendants' Statement of Uncontested Facts—Exhibit 32). On February 9, 2001, Amaury Díaz, Director of Finances of the GDB, informed Peña of the GDB's intention to immediately cancel his service order (*See* Defendants' Statement of Uncontested Facts—Exhibit 33).

Peña contends that his service order contract was prematurely terminated because of his political affiliation to the NPP. He contends that he was given no explanation for the cancellation of his contract and that the cancellation was completely arbitrary since his service orders had been previously renewed four consecutive times without complaint (Docket # 105, p. 5, ¶ 15). Plaintiff Peña also alleges that the GDB's Executive Vice President, Jóse V. Pagán, made private and public statements indicating that service orders with NPP members would be cancelled. In addition, Peña claims that he was replaced by a person affiliated with the PDP. However, similar to Plaintiff Vélez's case, several of these allegations prove inconsistent with the evidence contained in the record.

For example, Plaintiff Peña stated in his deposition that he never directly heard any employee from the GDB's management saying that the contracts of members of the NPP would be cancelled (*See* Defendants' Statement of Uncontested Facts— Exhibit 35). In fact, Peña claims to have heard a "rumor" from his supervisor, who supposedly heard it from someone else (*See* Defendants' Statement of Uncontested Facts—Exhibit 35). In addition, although Peña claims in the complaint to be the leader of an association of GDB employees which are affiliated to the NPP, he stated in his deposition that he did not know how these people learned about the organization, which employees were affiliated to it, and what activities they held (*See* Defendants' Statement of Uncontested Facts—Exhibit 34).

In this case, Plaintiff Peña has not presented any specific evidence which indicates the presence of a politically discriminatory animus other than a blanket assertion of being a member of the opposing political party and his interpretation regarding the termination of his service

order. Plaintiff has not provided any evidence showing that he was treated differently than other similarly situated employees based upon his political affiliation. In most cases, this failure within Plaintiff Peña's allegations would be sufficient for the Court to find for Defendants on summary judgment; however, assuming, for the sake of this opinion, that Plaintiff Peña has established a *prima facie* case, we will proceed to examine his claim.

Upon reviewing Plaintiff Peña's claims and the applicable law, the Court finds that Peña's claims must be dismissed since the only way in which Co-defendant Agosto could be held liable is if the theory of supervisory liability or *respondeat superior* is defeated. Regarding such a claim, we find that the following discussion is particularly on point, and will, therefore, liberally quote it:

> It is axiomatic that section 1983 imposes liability only upon those who actually cause a deprivation of rights. *See Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Camilo–Robles v. Zapata*, 175 F.3d 41(1st Cir.1999). Supervisory liability may not be grounded upon a theory of respondeat superior. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Figueroa–Torres v. Toledo Dávila*, 232 F.3d 270, 279 (1st Cir.2000); *Febus–Rodríguez v. Betancourt Lebrón*, 14 F.3d 87, 91 (1st Cir.1994). Thus, "[g]iven the lack of respondeat superior liability under Section 1983, a supervisor's liability is not for the [constitutional deprivation in itself]... but for distinct acts or omissions that are a proximate cause of [said deprivation]." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994); *see also Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989). The supervisor's conduct or inaction must have been intentional, *Simmons v. Dickhaut*,

804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others." *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir.1989); *Gaudreault v. Salem*, 923 F.2d 203, 209 (1st Cir.1990). "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *See Febus–Rodríguez v. Betancourt–Lebrón*, 14 F.3d 87, 92 (1st Cir.1994). Moreover, "an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials," must be established. Gutiérrez Rodríguez, 882 F.2d at 562.

*Alvarez–Sepúlveda v. Commonwealth of Puerto Rico*, 218 F.Supp.2d 170, 175–76 (D.P.R.2002) (some citations omitted).

▉ To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk. *See Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir.1992). This formulation correctly implies that deliberate indifference alone does not equate with supervisory liability; a suitor also must show causation. *See Maldonado–Denis*, 23 F.3d at 582 (explaining that the supervisor must have "had the power and authority to alleviate [the violation]"). In other words, the plaintiff must "affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." *Id.* A plaintiff can establish a causal link "if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 582 (1st Cir.1994).

In *DesRosiers v. Moran*, 949 F.2d 15 (1st Cir.1991), for example, this Court stated that "deliberate indifference" requires: "the complaint [to] prove that the defendants had a culpable state of mind and intended wantonly to inflict pain..." In the instant case, Plaintiff Peña has failed to allege anything about Agosto's state of mind. Therefore, deliberate indifference has not been adequately plead.

Given that "[t]he concept of proximate causation restricts tort liability to those whose conduct, beyond falling within the infinite causal web leading to an injury, was a legally significant cause," *Rodríguez–Cirilo*, 115 F.3d at 52; we must conclude that Plaintiff Peña has also failed to adequately tie the alleged misconduct to the supervisory actions of the above named Defendant. Plaintiff Peña has failed to carry his burden of proof in the case at bar. As a matter of fact, Plaintiff Peña has failed to present any evidence that shows that Agosto was **personally involved** in the facts alleged in the complaint. On the contrary, the evidence on record shows that Agosto did not have any direct participation in the alleged incident, nor did he have actual or constructive knowledge of it (*See* Defendants' Statement of Uncontested Facts—Exhibit 23). Therefore, Plaintiff Peña has not demonstrated a causal connection between the acts and/or omissions allegedly committed by Agosto and the alleged deprivation of federally protected rights. In particular, Plaintiff has failed to show that this Defendant incurred in behavior that reflects reckless or callous indifference towards Plaintiff's rights, since in fact, this Defendant was not involved in the events alleged in the complaint. Accordingly, Plaintiff Peña's claim for political discrimination against Defendant Agosto will be **DISMISSED WITH PREJUDICE.**

### Plaintiffs' claims under the Due Process Clause

An individual who is deprived of an interest either of liberty or property due to a governmental action is entitled, by virtue of the Fifth or Fourteenth Amendment, to due process of law. This imposition requires that the infringement of liberties or taking of properties be justified and that procedural fairness be given as a condition of the deprivation. Therefore, a plaintiff must prove that the government has indeed deprived him or her of a recognized liberty or property interest and that this interest was taken without providing the process that was due. Due process is dependent on the particularities of each situation. The fundamental requirement of due process consists of an opportunity to be heard at a meaningful time and manner. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The pre-termination process due a government employee is a matter of federal law, whereas the preliminary question whether a government employee possessed a recognizable "property right" or a legitimate expectation of continued employment, is controlled by the employment contract or state law. *Rivera–Flores v. P.R. Tel. Co.*, 64 F.3d 742, 749 (1st Cir.1995). Therefore, if a career employee is fired, due process requires that they receive a pre-termination hearing. *Maldonado v. Montalvo*, 826 F.Supp. 47 (D.P.R.1993), *citing Cleveland Bd. of*, 470 U.S. at 538–47, 105 S.Ct. 1487. Under Puerto Rico law, an employee's property right in a career position is void if the employee acquired that position through a violation of the Puerto Rico Personnel Act. *Kauffman v. P.R.T.C.*, 841 F.2d 1169, 1173 (1st Cir.1988).

### 1) Plaintiff Vélez

■ In the instant case, Defendants allege that Vélez acquired her position in violation of GDB personnel policies, which conform to the Puerto Rico Personnel Act. P.R. Laws Ann. tit. 3 § 1337. In their opposition to the Magistrate's Report, Defendants have proffered proof indicating that GDB employment regulations are subject to the Puerto Rico Personnel Act. *See Torres Ponce v. Jiménez,* 113 P.R. Dec. 58 (1982). Accordingly, the GDB must observe and comply with the areas essential to the merit principle enunciated in the Act. Although Plaintiff Vélez has not challenged this fact, she has set forth allegations that indicate that she was indeed qualified and "certified" by the GDB's Classification and Compensation Specialist, Ms. Istra Marrero Rosario, during the informal hearing held after the notification of her dismissal (Docket # 105 at p. 20)(Plaintiffs' Statement of Uncontested Facts at p. 8). However, given our previous examination regarding Vélez's work experience prior to her appointment, we find that these allegations are unsupported by evidence and border on the "self-serving line." Therefore, we conclude that the evidence on record indicates that Plaintiff Vélez had no reasonable expectation under state law of retaining employment based on an illegal appointment. *See Kauffman,* 841 F.2d at 1173. ("[u]nder Puerto Rico law, public employees hired for career positions in violation of the Puerto Rico Personnel Act, or agency regulations promulgated thereunder, may not claim property rights to continued expectations of employment because their career appointments are null and void *ab initio* "). Thus, even though in the instant case an informal hearing was granted to Mrs. Vélez to discuss her qualifications for the position of Auxiliary Director of Human Resources, she was not entitled to it because she did not have any property rights to the position she held. Therefore, absent a valid property interest, her due process claims must fail. Accordingly, Plaintiff's Vélez's due process claim will be **DISMISSED WITH PREJUDICE.**

### 2) Plaintiff Peña

■ As to Plaintiff Peña, Defendants argue that since he was not an official employee of the GDB, he had no legitimate expectation of continued employment. A legitimate expectation of continued employment may derive from a statute, a contract provision, or an officially sanctioned rule of the workplace. *Kauffman,* 841 F.2d at 1173. However, Defendants argue that Peña did not fall within any legally recognized exception because his service contract expired on June 30, 2001. While this is true, Defendants ignore the fact that Peña had approximately four (4) months remaining on his contract when it was cancelled in February of 2001. Therefore, this is not a case of non-renewal, but of cancellation or breach of contact.

■ The First Circuit has held that a "mere breach of contractual right is not a deprivation of property without constitutional due process of law". *Jiménez v. Almodovar,* 650 F.2d 363 (1st Cir.1981). "Otherwise, virtually every controversy involving an alleged breach of contract by a government or a governmental institution, agency or instrumentality would have to be a constitutional case." *See Casey v. Depetrillo,* 697 F.2d 22 (1st Cir.1983). Since in the instant case we have already determined that Plaintiff Peña's claim does not amount to one of political discrimination, we find that, at most, his action, if proven true, is one for breach of contract for the remainder of the service order for which Puerto Rico law provides a sufficient and adequate remedy. Therefore, we find that Plaintiff's Peña does not have a cogni-

zable due process claim and accordingly, said claim will be **DISMISSED WITH PREJUDICE.**

## Qualified Immunity

 Qualified immunity constitutes a right not to stand trial or face the burdens of litigation. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The procedures regarding qualified immunity allow for judicial review, *via* certiorari, on the qualified immunity issue. *Id.* at 207, 121 S.Ct. 2151. Thus, in order to avoid subjecting state officials to unnecessary and burdensome discovery or trial proceedings, district courts and courts of appeal should rule on the qualified immunity issue from the beginning, focusing on the characterization of the constitutional right in controversy and deciding, whether from the facts alleged in the complaint, a constitutional violation could be found. *See Id.* at 201, 121 S.Ct. 2151; *Judge,* 160 F.3d at 73.

A defendant can establish a qualified immunity defense in one of three ways: First, the defense should be sustained if the court finds that it was not clear at the time of the official acts that the interest asserted by plaintiff was protected by a federal statute or the Constitution. Second, even if the interest asserted by the plaintiff was clearly of a type generally protected by federal law, the defendant is entitled to immunity as a matter of law, if it was not clear at the time of the acts at issue that an exception did not permit those acts. Third, even if the contours of the plaintiffs federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if, it was objectively reasonable for him to believe that his acts did not violate those rights.

*Walsh v. Franco,* 849 F.2d 66, 69 (2nd Cir.1988), *citing Robison v. Via,* 821 F.2d 913, 920, 921 (2nd Cir.1987). Thus, the qualified immunity inquiry is composed of a three-prong test: 1) does the complaint state a claim for relief of a constitutional right?; 2) if it does, was the constitutional right clearly established at the time of the facts alleged in the complaint?; and 3) was it objectively reasonable for the officer to believe his actions did not violate the claimant's federally protected right?

### 1) Defendant Agosto

 Defendant Agosto contends that he is shielded by qualified immunity. He argues that, since he is not an expert on human resources, he had to rely on recommendations to terminate Plaintiff Vélez, hence he acted prudently and based his decision on a valid reason. With regards to Plaintiff Peña, he argues that he was not personally involved in the decision of canceling the contract and that there is nothing in the record demonstrating any action on his part which deprived Plaintiff Peña of his constitutional rights. Although we have already concluded that there were no constitutional violations committed by Defendant Agosto, for the sake of this opinion, we proceed to discuss the applicability of the qualified immunity doctrine.

Mr. Juan Agosto Alicea became President of the GDB in January 2, 2001. He remained in this position until June 30, 2002. (*See* Defendants' Statement of Uncontested Facts—Exhibit 3). When he assumed his position as President of the GDB, Agosto ordered a specialized study of all the appointments and personnel transactions that were executed from July 1, 2000 to December 31, 2000. The rationale behind this study was to determine if any appointments were made during the electoral prohibition ban period and also to analyze if all the personnel transactions

were made in accordance to law. Mrs. Alba Caballero was hired as an specialized external advisor in personnel issues for this purpose was. (*See* Defendants' Statement of Uncontested Facts—Exhibit 4). When Agosto examined Plaintiff Vélez's record and considered her appointment as null and void he relied on the assessment and opinion rendered in the investigation conducted by Mrs. Alba Caballero. (*See* Defendants' Statement of Uncontested Facts—Exhibit 15). Furthermore, after the informal hearing of June 15, 2001, Agosto was also advised by Lillian F. Jiménez Montijo, the GDB's Human Resources and Labor Relations Director, that the fields of human resources and labor relations are different fields of study and the experience of Mrs. Vélez was largely circumscribed to labor relations and not human resources. Also, Defendant Agosto was informed by Mrs. Jiménez Montijo that Mrs. Vélez did not comply with the requirement of two years of experience in supervisory functions. Thus, another specialist in human resources advised once again to Mr. Agosto that Mrs. Vélez's appointment was null and void. (*See* Defendants' Statement of Uncontested Facts—Exhibit 9). Therefore, Mr. Agosto's actions were objectively reasonable in light of the recommendations he received from two experts in human resources administration. Accordingly, Defendant Agosto is entitled to qualified immunity and Plaintiff's Vélez's claims against him in his personal capacity, in any event, should be **DISMISSED WITH PREJUDICE.**

With regard to the claims brought by Plaintiff Peña against Agosto, the only defense raised by Defendant is that he was not **personally involved** in the decision of canceling the existing contract between the GDB and Plaintiff Peña. After carefully examining the amended complaint, we find that it lacks sufficient factual allegations which establish that Agosto failed to act

objectively reasonable while performing his functions. Furthermore, as we have already discussed, Plaintiff has failed to effectively present evidence that shows that Agosto was personally involved in the acts alleged by Peña. Accordingly, absent any evidence indicating that Agosto acted in a reckless, indifferent and unreasonable manner which affected Peña's constitutional rights, we must conclude that Agosto is also entitled to qualified immunity as to the claims brought by Peña and, in any event, the claims against him in his personal capacity should be **DISMISSED WITH PREJUDICE.**

### 2) Defendant Lilliam Jiménez–Montijo

▉ Lilliam Jiménez–Montijo, GDB's Human Resources and Labor Relations Director, also asserts her entitlement to qualified immunity since she was only acting as a hearing officer at Plaintiff Vélez's informal hearing (*See* Docket # 59 at p. 1). In addition, the record reflects that Jiménez–Montijo began working at the GDB five days after Plaintiff's Vélez had been notified of her impending dismissal (Docket # 105 ¶ 9 & 10). Plaintiff's Vélez contends that Jiménez–Montijo violated her constitutional rights because she did not act objectively reasonable when she presided the hearing and subsequently stated that Plaintiff's dismissal was already decided by her superiors. In addition, Plaintiff alleges that Jiménez–Montijo made several commentaries implying that she was going to be dismissed soon because of her political affiliation to the NPP (Docket # 105 ¶ 11). However, we find that these bare and conclusory allegations are not supported by the record which clearly indicates that Co-defendant Jiménez–Montijo's participation in the instant case was limited to presiding the hearing, evaluating the facts presented at said hearing, and adju-

dicating the recommendation that Plaintiff Vélez did not meet the job requirements (Docket # 59 at p. 2) (*See* Defendants' Statement of Uncontested Facts—Exhibit 9). In the instant case, apart from Plaintiff Vélez's self-serving allegations, the record is devoid of any other evidence that would indicate that Co-defendant Jiménez–Montijo had any influence over Plaintiff's dismissal, that she created or participated in a scheme to political discriminate against Plaintiff or that she was tainted with a political discriminatory animus while presiding the hearing. Therefore, we find that Co-defendant Jiménez–Montijo is also is entitled qualified immunity and Plaintiff's Vélez's claims against her in her personal capacity will be **DISMISSED WITH PREJUDICE.**[3]

### 3) Defendant Alba Caballero

■ Alba Caballero ("Caballero") was hired by the GDB on 2001 as an internal independent contractor for counseling and consulting services in administrative and human resources matters (*See* Alba Caballero Statement of Material Facts—Exhibit 1, 2 & 3). Since approximately 1986, she has been contracted by various government agencies to advise on personnel, human resources and/or labor matters (*See* Alba Caballero Statement of Material Facts—Exhibit 3) Caballero did not hold any administrative or decision making position at the GDB (*See* Alba Caballero Statement of Material Facts—Exhibit 2). As part of her tasks, Caballero examined the personnel records of more than twenty (20) GDB's employees who were under probation (*See* Alba Caballero Statement of Material Facts—Exhibit 1 & 2) (*See Also* Defendants' Statement of Uncontested Facts ¶ 4). One of the personnel records examined by her was that of Plaintiff Vélez (*See* Alba Caballero Statement of

Material Facts—Exhibit 2). As a result of the examination, exclusively based in the personnel and recruitment records of the GDB, Caballero issued a report indicating that Plaintiff Vélez's appointment was null and void since she did not meet the experience requirements for the post (*See* Alba Caballero Statement of Material Facts—Exhibit 2). Apart from her report, Caballero did not participate in any way whatsoever in the GDB's personnel decision to terminate Plaintiff Vélez (*See* Alba Caballero Statement of Material Facts—Exhibit 2).

However, Plaintiff Vélez contends that Caballero analyzed her record with the specific intent to look for a motive to demote or terminate her. Plaintiff also alleges that Caballero is an alter ego of the GDB's nominating authority, that she was part of a joint conspiracy that discriminated against her, and that she intentionally changed the requirements for the position that Plaintiff held. Yet, nowhere in the record can we find factual evidence that supports these claims. Again we are presented with bare, conclusory, self-serving and unfounded allegations.

The record before the Court indicates that Caballero merely had a contract with the GDB to do what she specializes in—labor and personnel analysis, that she had no authority or decision power at the GDB and, that her opinion determining Plaintiff Vélez's appointment was null and void was based on an analysis of Plaintiff's record. Nowhere in the record has Plaintiff established that Caballero participated in the personnel action dismissing Vélez nor that she was aware of Vélez's political affiliation. Accordingly, we find that Caballero cannot be considered as a government official who was acting under color of state law and whose conduct violated Vélez

---

**3.** We note that Plaintiff Peña has no claims against this Co-defendant.

rights. Neither can we conclude that she had personal involvement in Plaintiff's termination. As such, since Plaintiff Vélez has failed to show a causal nexus between Caballero's actions and her alleged violated rights, Caballero cannot be held liable under Section 1983 and, therefore, the claims against her will be **DISMISSED WITH PREJUDICE.**[4] In any event, should the Court have determined that Caballero was a government official acting under color of state law, we find that she is also entitled to qualified immunity as Plaintiff has failed to show that Caballero's actions were not objectively reasonable.

**Supplemental Claims**

It is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims against Defendant warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

It has been stated that the holding in *Gibbs* "seems to clearly require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." *Snowden v. Millinocket Reg'l Hosp.*, 727 F.Supp. 701, 709 (D.Me.1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit." *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991).

■ Although district courts are not obliged to dismiss pendent state law

claims, in the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness and comity-will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 5, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *citing Gibbs,* 383 U.S. at 726–27, 86 S.Ct. 1130; *see also Mercado–Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 896 (1st Cir. 1992); *Rivera v. Murphy,* 979 F.2d 259, 264 (1st Cir.1992); *Figueroa Ruiz v. Alegria,* 896 F.2d 645 (1st Cir.1990); *cf. Vega v. Kodak Caribbean,* 3 F.3d 476, 478 (1st Cir.1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 47 (1st Cir.1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state law claims were properly dismissed under the rule of *United Mine Workers v. Gibbs* ").

The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon,* 484 U.S. at 350 n. 5, 108 S.Ct. 614, *citing Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130. Therefore, since in the instant case we have already dismissed all of Plaintiffs' federal claims, the Court declines to exer-

---

4. We also note that Plaintiff Peña has no claims against this Co-defendant.

cise supplemental jurisdiction over the remaining Commonwealth Claims and, accordingly, they will be **DISMISSED WITHOUT PREJUDICE.**

## Conclusion

Pursuant to the reasons set forth before in this opinion Plaintiffs' federal claims are **DISMISSED WITH PREJUDICE** and their claims under the laws of the Commonwealth of Puerto Rico are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**